(90 Misc. Rep. 106)

BARBER v. WOOLF et al. (No. 7273.)

(Supreme Court, Appellate Division, First Department. May 7, 1915.)

1. MUNICIPAL CORPORATIONS ⬦657—VACATION OF STREET—EFFECT—EASEMENTS OF LIGHT AND AIR—STATUTE.

Where the owner of property is awarded damages for the closing of a street under the Street Closing Act (Laws 1895, c. 1006), the quasi public easement of light, air, and access arising from the fact that the property abuts on a public highway is not included in the property rights for which compensation is made by the city and so extinguished.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 722, 844, 1429, 1496; Dec. Dig. ⬦657.]

2. TAXATION ⬦676—EASEMENT OF LIGHT AND AIR IN PUBLIC STREET—RELIEF FROM BID AT TAX SALE—STATUTE.

Where a street was closed under Street Closing Act (Laws 1895, c. 1006), by the express award of the commissioners, the owner of property abutting thereon being awarded substantial damages for his loss, including deprivation of the easement of light, air, and access in the land covered by such street, he was estopped as against the owner of such land to set up the rule that such easements are not extinguished by a street closing under the act, since compensation is not usually made therefor, so that such owner's title was not rendered unmerchantable by the existence of any easement so as to entitle a purchaser of the land at sale foreclosing a tax lien to be relieved from his bid.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1355; Dec. Dig. ⬦676.]

Appeal from Special Term, New York County.

Action to foreclose a tax lien by Simeon E. Barber against James A. Woolf and others. From an order granting the application of George B. Heath, purchaser at the sale, for an order relieving him from his bid, plaintiff appeals. Reversed, and motion denied.

The following is the opinion of Newburger, J., in the court below:

Pursuant to a judgment of foreclosure of a tax lien a sale was held, and the purchaser now asks to be relieved from his bid on the ground that one Minzes-

heimer has or may have private easement of light, air, and access over the land sold. It is conceded that, under the authority of Jackson v. Smith, 153 App. Div. 724, 138 N. Y. Supp. 654, affirmed 213 N. Y. memoranda, 4, 107 N. E. 1079, the judgment herein does not bar any easement which Minzesheimer may have had if the easements survived the proceeding taken under the so-called Street Closing Act (chapter 1006 of the Laws of 1895). In the proceedings for the closing of Rockwood street Minzesheimer was awarded damages to his property.

As was said by Mr. Justice Scott in Matter of Olinger, 160 App. Div. at page 103, 145 N. Y. Supp. at page 179: "There remains, however, in many cases, and very probably in the case of property abutting upon Madison avenue, a third class of easements, also private in their nature, which arise from express or implied grants between the owners of the property confined and abutting upon a street or avenue. Such private easements are created, for instance, by the conveyance of a lot with reference to a map or plan, in which one of the boundaries of the lot conveyed is the abutting street. With this class of private easements the city has usually no concern either to abolish or to preserve them, and it certainly cannot be compelled against its will to compensate for them. · The distinction between these two classes of private easements was very clearly made in Johnson & Co. v. Cox, supra, where both were present. That case, reaffirmed in Matter of Mayor, etc. (Walton Ave.) 197 N. Y. 518, 90 N. E. 59, contains the latest authoritative pronouncement by the Court of Appeals as to what easements are and what are not to be compensated for when a public road is discontinued and closed. The same subject has recently been exhaustively considered with a review of the precedent authorities by Mr. Justice Laughlin, writing for a unanimous court. Matter of City of N. Y. (New Avenue) 153 App. Div. 164, 138 N. Y. Supp. 107. The easements, sometimes called private, but really special or quasi public, of light, air, and access, arising from the fact that private property abuts upon a public highway, are to be compensated for if the highway is closed and the easements thus destroyed. Other private easements arising from express or implied grant are not destroyed by the closing of the highway, and are therefore not to be compensated for, and this is true although the strictly private easements may affect the same property and confer the same rights over the same strip of land as those arising from mere contiguity to the street. As a general thing, no public requires the extinguishment of the strictly private easements of the class last defined. If the property respecting which the relator claims damages is subject to easements of this nature, it · is not due to the existence of a highway in front of the property, but to the fact that his predecessors in title and the owners of other abutting property elected, as between themselves, to create reciprocal easements over the bed of the highway. These are not extinguished by the legal closing of the street in a public highway."

So, also, in the Matter of the Grand Boulevard and Concourse, 160 App. Div. 80, 145 N. Y. Supp. 254, affirmed 212 N. Y. 538, 106 N. E. 631, it was held that private easements created by grant, express or implied, are not destroyed or extinguished by the closing of a street under the act of 1895.

In view of these authorities, the application of the purchaser to be relieved must be granted. Settle order on notice.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Harold Swain, of New York City, for appellant.
George E. Coney, of New York City, for respondents.

SCOTT, J. [1] The respondent purchased at a tax lien sale a piece of real property which formerly lay wholly within the lines of Seventh avenue as laid down on a private map known as the map of Mt. Eden filed in 1854, and subsequently shown as Rockwood street on a public map filed by the park department in 1879. The lot in question

lay in front of and abutted upon a lot known as lot No. 51 on the Mt. Eden map, which was conveyed by a description referring to that map, in 1855, by Thomas C. Woolf and others, who had made and filed the map, to Isaac Minzesheimer from whom Charles Minzesheimer obtained title, by mesne conveyance, in 1880. Said Seventh avenue or Rockwood street was never actually or legally opened as a public street, but it is conceded that by the deed to him Isaac Minzesheimer acquired, as appurtenant to the lot which he acquired, private easements of light, air, and access over that portion of the proposed street shown on the Mt. Eden map as lying in front of and abutting upon said Seventh avenue or Rockwood street. The respondent's objection to the title of the lot from the purchase of which he seeks to be relieved is that it is still incumbered by said private easements, and is therefore unmerchantable and practically worthless.

When the final maps were filed in 1895, the said Seventh avenue or Rockwood street was shown as discontinued, and Minzesheimer's lot was left in the middle of a block as laid out on the permanent plan, without any means of access or egress except over said Seventh avenue or Rockwood street. After the filing of the map in 1895, the city of New York instituted a proceeding to open Walton avenue which involved proceedings, under chapter 1006 of the Laws of 1895, to close a large number of streets and avenues shown on that map as having been discontinued. It has been repeatedly held that such proceedings did not operate to extinguish purely private easements such as those which Minzesheimer had acquired over the bed of Seventh avenue or Rockwood street (Johnson v. Cox, 196 N. Y. 110, 89 N. E. 454; Matter of Olinger, 160 App. Div. 96, 145 N. Y. Supp. 173; Matter of the City of New York, Grand Boulevard, 160 App. Div. 80, 145 N. Y. Supp. 254, affirmed 212 N. Y. 538, 106 N. E. 631), although it is claimed that doubt has been cast upon the proposition by some expressions used in the opinion of the Court of Appeals in the last-mentioned case. Whether or not those expressions were intended to be understood as questioning the rule, it was not expressly disaffirmed, and it must be accepted as the present law, as declared by this court and the Court of Appeals, that street closing proceedings under the act of 1895 are not intended and do not operate to extinguish purely private easements resting upon actual or presumed grants.

The respondent's objection to the title would therefore be perfectly valid, were it not for another circumstance upon which appellant relies.

[2] The proceeding above referred to as having been instituted to legally close discontinued streets was known as Matter of the Mayor, etc. (Walton Avenue). It went through this court (131 App. Div. 696, 116 N. Y. Supp. 471) and the Court of Appeals (197 N. Y. 518, 90 N. E. 59). Charles Minzesheimer, the then owner of the lot described as No. 51 on the Mt. Eden map, petitioned, as he had a right to do under the Street Closing Act of 1895, for an award of the damages which he would suffer. In this petition he set forth his title, and showed that in the conveyance under which he claimed the lot known as No. 51 acquired by him designated the said property by reference to the map number on said map, and bounded the same in front on the westerly

side by the street shown on said map as Seventh avenue. He set forth that:

"By virtue of said deed, petitioner became possessed of and interested in all rights, easements, and privileges appertaining to said premises, including the usual and ordinary street easements of light, air, and access as appurtenant to said premises."

He further set forth, referring to the filing of the final maps in 1895, that thereupon said Seventh avenue, or Rockwood street, and said Walnut street, or East 174th street, were omitted and shown as discontinued, closed, and abandoned, and that, pursuant to the provisions of chapter 1006 of the Laws of 1895, said Rockwood street and said East 174th street were thereafter "discontinued, closed, and abandoned, both as public and private highways, and all easements of light, air, and access and rights of way of every nature were extinguished and destroyed as hereinafter stated." He further alleged that by reason of the steps taken as therein set forth, by the local authorities of the city of New York, "the aforesaid easements in and to said Walnut street or East 174th street and in and to said Seventh avenue or Rockwood street as appurtenant to said lot have been extinguished and destroyed, and the owner of the soil of said discontinued streets and avenues is now vested with the absolute fee title thereto." He further set forth the facts showing that the said closing took effect on November 2, 1895, when section 9 of said final map was filed as provided by law; Jerome avenue, one of the streets bounding the permanent block in which said premises lay, being then an opened street.

The report of the commissioners awarding damages to said Charles Minzesheimer, as stated in the moving affidavit, expressly stated the theory upon which the award was made. It stated, in substance, that, where the person to whom the award was made was the owner of the entire property, the award represented the entire loss and damage which the owner affected by the abandonment, discontinuance, and closing had suffered. It stated that the commissioners had assumed that where, at the time of the filing of the final maps, there was an open, existing street which was also shown on the permanent plan and which bounded the block or plot in which the discontinued street was situated, the streets and avenues for whose discontinuance and closing damages were awarded, became discontinued and closed upon the filing of said final maps, and that the portions of Seventh avenue, Walnut street, and Eighth avenue contained within the block bounded by Jerome avenue, East 172d street, Townsend avenue, and Belmont street, were closed and discontinued upon the filing of the final maps, to wit, November 2, 1895. Said report contains the following clause:

"We further report that our awards herein are based on the assumption that, upon the discontinuance and closing of the streets or avenues for whose discontinuance and closing we have awarded damages, such parts or portions thereof as are included within the boundaries of any square or plot of ground made by the intersection of any streets, or avenues laid out by the local authorities upon the permanent map or plan of the city, were no longer streets or avenues for any purpose whatever, and that the owner in fee of the land or soil within the boundaries thereof became entitled thereupon to inclose, use, and occupy the same to the exclusion of all others, and that all easements of light, air, and access in the same were thereupon extinguished."

The commissioners awarded Mr. Minzesheimer, for his damages aforesaid, a very substantial sum ($1,200), their report was confirmed, and the amount of the award was paid to and accepted by said Minzesheimer. There can be no doubt that the damages referred to were claimed by Minzesheimer, and awarded to him by the commissioners upon the theory, very generally accepted when the report was made, that the effect of filing the map of 1895 was to extinguish all easements, private as well as public, over the streets and avenue shown on said map as discontinued, whether such streets and avenues had been actually opened or not. Such is the plain meaning of Minzesheimer's petition and the commissioners' report, and upon no other theory can the substantial award made to Minzesheimer be explained. Under these circumstances, it is clear that Minzesheimer or any successor in interest would be estopped from ever claiming that there still remained as appurtenant to his lot No. 51 any easements, public or private, over the plot of land which the respondent has purchased. Public easements there never were, and for his purely private easements he has claimed and been paid compensation. Under these circumstances, peculiar to this case, we are of opinion that the title to the lot purchased by respondent is not unmerchantable.

The order appealed from must therefore be reversed, with $10 costs and disbursements, and the motion denied, with $10 costs. Order filed. All concur.