WILLIAM G. REXROAT *et al.*, Plaintiffs-Appellants, *v.* RUSSSELL THORELL, Defendant-Appellee.

Third District    No. 79-513

Opinion filed October 15, 1980.—Modified on denial of rehearing December 17, 1980.

Daniel P. Nagan, of Bisbee & Nagan, of Macomb, for appellants.

John V. Simshauser, of Berry, Leighty & Simshauser, of Macomb, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

The plaintiffs, William G. and Mary Ruth Rexroat, sought a declaratory judgment setting forth their right of access across an old roadway crossing a wooded pasture owned by the defendant, Russell Thorell, and servicing a small field on the plaintiffs' farm. Accessibility to the field from other than the old roadway is limited, because a stream running through the plaintiffs' farm cuts off ready access to the seven-acre tract.

The plaintiffs sought relief on three theories. Two of those theories, namely, that an easement should be implied in law by necessity and that the plaintiffs and their predecessors in title acquired a prescriptive easement through adverse use, were rejected by the trial court.

The third theory upon which the plaintiffs based their claims was that a public road had been created by 15 years' continuous adverse use by the general public, pursuant to section 2—202 of the Illinois Highway Code (Ill. Rev. Stat. 1977, ch. 121, par. 2—202). The plaintiffs contended that, as owners of land abutting on a public road, they retained a private right of way following the abandonment of the road by the general public.

Following a bench trial, the court found that a public road had been created by 15 years' adverse use. However, the court ruled against the plaintiffs on their theory of a retained private right of way. Judgment was entered accordingly and, following the denial of the plaintiffs' post-trial motion, this appeal was taken.

We are asked to decide whether a successor in interest to the user of an abandoned public road retains a private easement therein.

All of the real estate involved in this case is situated in Emmet Township, McDonough County, Illinois. The defendant owns a farm which includes in its boundaries an 80-acre tract described as the west half of the southwest quarter of section 33. The plaintiffs' farm is situated in a part of the southeast quarter of section 32 immediately west of and adjacent to the defendant's 80 acres, so that the west boundary line of the defendant's 80 acres and the east boundary line of the plaintiffs' farm constitute a common boundary line between the two properties.

Three public highways form a "U" shape around both farms, running along the east side of the defendant's farm, the common south boundary line of both farms, and the west side of the plaintiffs' farm.

At the northeast corner of the plaintiffs' farm, Spring Creek enters the farm from the north, runs a short distance southwesterly and then meanders in a generally southerly direction across the plaintiffs' farm more or less parallel to and a short distance west of the common property line between the parties.

The plaintiffs maintained that in 1913, and prior thereto, there was a public highway, hereinafter referred to as the "old road," which began approximately an eighth of a mile south of the northeast corner of the defendant's 80 acres and on the west line of the highway running along the east side of the defendant's farm, and that this old road continued in a generally southwesterly direction to the common boundary line between the farms owned by the plaintiffs and the defendant. The old road, according to the plat offered in evidence by the plaintiffs, then proceeded westerly across the plaintiffs' land to Spring Creek and thence on westerly entirely across what is now the plaintiffs' land to the highway running along the western side of the plaintiffs' farm.

The trial court found that a public road had been created by over 15 years' adverse use of the old road by the general public, from approximately 1913 to 1942, pursuant to section 2—202 of the Illinois Highway Code (Ill. Rev. Stat. 1977, ch. 121, par. 2—202). The trial court also found

that the road had been abandoned as a public highway around 1942 or 1943.

The plaintiffs have in the northeast corner of their farm a tillable, triangular shaped piece of ground, referred to as "the seven acres" which is generally bounded on the northwesterly side by Spring Creek, on the east by the common property line between the parties, and on the south by what would be the old road if the old road were in existence.

To bring farm machinery from the main part of the plaintiffs' farm directly to the seven-acre tract requires going east across Spring Creek. There is no bridge or ford for this purpose. One of the plaintiffs' witnesses testified that, in 1937, where the old road crosses the creek, there was a ford, but conceded that since that time the creek has changed substantially in that the banks are much steeper and the creek has deepened.

The plaintiffs maintain that the only economically feasible access to the seven-acre tract of their farm which is isolated by Spring Creek is via the old road since the cost of a bridge would be prohibitive.

At the point where the old road leaves the defendant's farm and enters the plaintiffs' property, there is a fence gate which must be opened in order for any person or vehicle to proceed through. Wally Lundberg, who owned the plaintiffs' farm from 1950 until he conveyed it to the plaintiffs in 1960, testified that this fence gate across what was the old road remained throughout the time he owned the land. The plaintiffs have since maintained the same type of fence gate during the time they have owned the farm. At this gate the plaintiffs have posted on the fence post a "keep out" sign directed at anyone coming from the defendant's land. At the east end of the old road where it first enters the defendant's land there is a fence gate across the road, and the plaintiffs testified that since they purchased the farm in 1960 there has always been some sort of gate or wire across the place where the old road begins on the defendant's farm.

From the evidence, the trial court concluded that the old road had not been used as a public road, nor had there been any effort to maintain it since at least 1942 or 1943. Upon this basis the trial judge found that the public highway which formerly existed on what is now called the old road was long ago abandoned by the highway authorities. No evidence of any type of formal vacation by local authorities was introduced.

■■ Whether the plaintiffs, as abutting landowners, have a right of way in this abandoned road is the question now before us. Clearly they do not have an easement by necessity, as such an interest requires that the dominant and servient tracts have been initially owned by one owner, it being the splitting of the two that creates the implied easement of necessity (*Finn v. Williams* (1941), 376 Ill. 95, 33 N.E.2d 226; *Freeland v. Dickson* (1978), 63 Ill. App. 3d 13, 379 N.E.2d 903). Likewise, the plaintiffs have not acquired a prescriptive easement in the old road since their

use has not been adverse, continuous and uninterrupted, under claim of right, with knowledge of the owner and without his consent for the statutory limitation period of 20 years (*Mueller v. Keller* (1960), 18 Ill. 2d 334, 164 N.E.2d 28; *Roller v. Logan Landfill Inc.* (1974), 16 Ill. App. 3d 1046, 307 N.E.2d 424). In the case at bar, the plaintiffs' use of the old road cannot be considered hostile prior to 1968, the date when the defendant purchased the adjoining farm and first voiced his objections.

Whether the plaintiffs retain a private easement in the abandoned road as abutting landowners appears to be a question of first impression in Illinois.

The trial court relied on *No. 3 Oakland Suburban Heights, Inc. v. Bekermeier* (1968), 94 Ill. App. 2d 67, 235 N.E.2d 867, in deciding that no private easement rights were retained by the plaintiffs and that a suit for money damages represents the exclusive remedy for abutting landowners upon formal vacation of a public road. We find *Bekermeier* unpersuasive as applied to the factual situation found in the present case. *Bekermeier* concerned the rights of nonabutting land owners to seek money damages under section 6—315a of the Highway Code (Ill. Rev. Stat. 1965, ch. 121, par. 6—315a) following formal vacation of a public road and was decided on jurisdictional grounds. The question of whether the landowner could forego money damages and retain use of a private right-of-way was never presented or decided in *Bekermeier*.

One early Illinois Supreme Court case, *Thomas v. Metz* (1908), 236 Ill. 86, 86 N.E. 184, appears to hold that if an individual can prove use of an alley for a period of more than 20 years, he can claim an easement in the alley following its vacation or abandonment. (236 Ill. 86, 94, 86 N.E. 184, 187.) The reasoning behind this opinion is obscure, however, and no later case law has been found to elucidate its findings.

As the plaintiffs note in their brief, the most thorough analysis of the issue now before us is contained in Annot., 150 A.L.R. 644 (1944), in an annotation entitled "Private easement in way vacated, abandoned, or closed by public." The majority view which emerges from a review of the cases collected there is noted in section II(a) of the annotation as follows:

> "Where a landowner has a private right of way in a strip of land which is or subsequently becomes a public street or highway, such private right is ordinarily held to survive the vacation or abandonment of the street or highway by the public." Annot., 150 A.L.R. 644, 645 (1944).

■■ A minority view, which holds that private easements in a way become merged in the rights of the public when the way becomes a public street or highway and are not revived upon the vacation or abandonment of the street or highway by the public, is found in cases from New York, Maryland and New Jersey. See *Barber v. Woolf* (1915),

167 App. Div. 627, 153 N.Y.S. 139, *affirmed* (1915), 216 N.Y. 7, 109 N.E. 868, and *Libertini v. Schroeder* (1926), 149 Md. 484, 132 A. 64.

In section III(b) of the annotation contained in 150 A.L.R. 644 (1944), the following rule is stated:

> "Where one is deemed to acquire a private easement in a public street or highway from the mere fact that his property abuts thereon, such easement continues not withstanding the vacation, abandonment or closing of the street or highway."

Although neither the majority rule found in section II (a) of the annotation nor the rule expressed in section III (b) reflects the specific factual situation now before us, we elect to adopt the position expressed in those rules. Thus, although the abandoned roadway in the case at bar does not abut the plaintiff's land but runs to and through it and there is no evidence to show that plaintiffs or their predecessors in interest had a private right of way prior to the creation of the public road, we hold that the abandonment of the public roadway, under the facts of the case at bar, has created a private easement in the roadway benefiting the plaintiffs' land.

The record reveals that the public roadway was abandoned around 1942, that plaintiffs and their predecessors in interest have continued to use regularly, though not continuously, a portion of the roadway as a private right-of-way to the isolated seven-acre plot on plaintiffs' land since the abandonment, and that such access has been the only means of access for many years. Under these circumstances the fact that alternative means of access may be possible, *i.e.*, via construction of a bridge across Spring Creek or by developing a roadway running north along the east bank of Spring Creek from the public highway abutting the southern boundary of plaintiffs' land, both costly and complicated procedures, does not alter our decision. The plaintiffs' rights to an easement implied by law need not be based on absolute necessity. As the court in *Puszkiewicz v. Friedlander* (1973), 12 Ill. App. 3d 1017, 299 N.E.2d 400, stated, after summarizing Illinois case law on the question of "necessity" in regard to a claim of easement implied by law:

> "In such cases it is not necessary that the claimed easement be absolutely necessary for the enjoyment of the estate granted, but it is sufficient that it is reasonable and highly convenient and beneficial thereto." (12 Ill. App. 3d 1017, 1021, 299 N.E.2d 400, 403, quoting from *Deisenroth v. Dodge* (1955), 7 Ill. 2d 340, 346, 131 N.E.2d 17, 21.)

The plaintiffs in the case at bar have certainly met this standard.

The defendant argues that the plaintiffs should be estopped from claiming an easement in the abandoned roadway because they have maintained an obstruction across the roadway, namely a fence on which is posted a "keep out" sign. We find this argument unpersuasive, since the

cases on which the defendant relies indicate that one who has received compensation for the value of his easement is thereafter estopped from asserting rights to a private easement. (See *Barber v. Woolf* (1915), 167 App. Div. 627, 153 N.Y.S. 139, *affirmed* (1915), 216 N.Y. 7, 109 N.E. 868.) Because the plaintiffs in the case at bar have received no compensation, the estoppel argument presented by the defendant is inapposite.

■■ Likewise, we find the defendant's laches argument unpersuasive. The defendant has shown no prejudice to himself resulting from the plaintiffs' delay in bringing suit. (See *Keessen v. Zarattini* (1969), 119 Ill. App. 2d 284, 256 N.E.2d 377.) Furthermore, the defendant suffered plaintiffs' continued use of his property after first voicing objections to the plaintiffs in 1968. Under these circumstances, equitable considerations argue against any application of the laches doctrine to bar the plaintiffs' suit.

Because we hold that the plaintiffs' use of the abandoned right of way has created an easement benefiting their land, we reverse the judgment of the Circuit Court of McDonough County, and remand this cause to the trial court with directions to declare and define the plaintiffs' easement.

Judgment reversed and remanded with directions.

ALLOY, P. J., and STOUDER, J., concur.