GEORGE E. DEEM *et al.*, Plaintiffs-Appellants, *v.* LYLE CHEESEMAN *et al.*, Defendants-Appellees.

Second District  No. 82—526

Opinion filed March 8, 1983.

Ronald F. Coplan, of Morrison, for appellants.

Robert L. Morris and Edward J. Mitchell, both of Lanark, for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

The plaintiffs, George E. Deem and Helen E. Deem, brought an action against the defendants, Lyle Cheeseman and Shirley Cheeseman, seeking recognition of an easement by implication and an injunction restraining the defendants from interfering with use of the easement.

The easement sought crossed land owned by the defendants. Following a bench trial, the circuit court of Carroll County denied the plaintiffs relief, and they appealed. The issue presented is whether the trial court erred in failing to recognize an easement across the defendants' land to be used by the plaintiffs for ingress to and egress from the plaintiffs' property.

The Deems owned a five-acre tract of land located in Elkhorn Grove Township in Carroll County. The land is partially covered with timber and is the site of a cabin used for recreational purposes. The land to the south and west of the plaintiffs' property belongs to the Cheesemans. The land bordering the plaintiffs' property to the north and east is owned by Bowles (formerly owned by Sword), and the land directly west of the Bowles/Sword property belongs to Deets. The Deets property is bounded on the west by a public township road (hereinafter "township road") running north-south. That road also abuts the defendants' property south of the Deets property. An unimproved roadway (hereinafter "quarry road") runs easterly from the township road cross the Deets and Bowles/Sword property to a point north of the plaintiffs' land and turns south onto the plaintiffs' land, where it

intersects an east-west creek. The creek runs through the far northern portion of the plaintiffs' land and continues westerly, running south of the quarry road and roughly parallel to it, intersecting the township road at a point about 1,000 feet west of the plaintiffs' property. The following rough diagram shows the relative positions of the creek, roads, and lands involved.

The plaintiffs' five-acre tract and the defendants' land were part of a common parcel acquired from the United States Government by Daniel Stormer by a patent deed dated March 1, 1846. Besides the government, Stormer was the only common owner of the lands. He conveyed 10 acres of his 80-acre parcel, including what is now the plaintiffs' property, to Fletcher Hutton by deed dated May 19, 1854. The plaintiffs purchased their property from John and Isabella Persona, through an installment contract dated August 9, 1968, took possession of the land, and received the deed in 1976. Persona's immediate predecessor in title was Hutchinson.

With few exceptions access to the plaintiffs' property has been by way of the quarry road across the Deets and Bowles/Sword property. Mrs. Sword and Mrs. Deets gave the plaintiffs oral permission to traverse their land, and the plaintiffs have a key to the gate between the Deets and Bowles/Sword property. Mrs. Deets is willing to provide the plaintiffs with a written easement. The plaintiffs have not commu-

nicated with Bowles about this access. When the plaintiffs bought their property, a rock quarry serviced by the quarry road was open and the road was regularly used and maintained by quarry employees, but the quarry is no longer operating, having closed 10-12 years ago. The quarry road has a one-foot-thick gravel base but has deteriorated and is now grassed over. The plaintiffs describe it as being located across low-lying ground in a flood plain subject to overflow. The plaintiffs have used the quarry road for access to their property during the full extent of their possession, with one exception. In 1973, they crossed a mowed path on the defendants' property when the creek washed out, but that path is no longer there. Prior owners Persona and Hutchinson also used the quarry road for access to the five acres. The only exceptions in evidence were Persona's uses of the defendants' property, with their permission, in particular circumstances (*e.g.*, when other access blocked by fallen tree, when creek rose too fast, and for passage of heavy trucks to dig a well and build a garage).

At the point where the quarry road meets the creek, the creek is 12 feet wide and about six inches deep, but the depth of the water varies. When flooded, the creek is impassable. About four years ago the plaintiffs had about 100 tons of rock dumped in the creek to fill it in, but that rock has since been washed away. Persona built a wooden ford across the creek when he owned the land, but the ford rotted. There was evidence that a floating plank bridge could be built at a cost of about $3,000. The bridge on the township road across the same creek, of similar terrain at that point, cost approximately $68,000 to construct.

The defendants' land is used for a general farming operation. The field to the west of the plaintiffs' tract, across which the plaintiffs claim an easement, is rotated for crops and used to pasture a dairy herd. It has two deep ravines and a 6% to 9% northerly slope. There was testimony that construction of a rock road across it would cost $75 to $100 per foot for about 1,000 to 1,200 feet and would require four to seven drainage tubes (28 to 30 feet wide) at a cost of $22 to $30 per foot.

The plaintiffs' complaint seeking recognition and enforcement of an implied easement was filed on November 14, 1979. The defendants moved to dismiss the complaint, contending that the complaint was not specific enough and that, since there was no allegation that there was any physical evidence on the property to demonstrate the existence of such an easement, the action was barred by Illinois' 40-year statute of limitation. The court granted the motion to strike and allowed the plaintiffs to amend their complaint to describe the alleged

easement with more specificity. The plaintiffs filed an amended complaint, alleging that the easement lay to the west of the plaintiffs' property.

Following the hearing, the trial court denied the plaintiffs' prayer for relief. In its memorandum opinion, it based its decision on findings that the plaintiffs had a reasonable access from their property to the public road and that there was no evidence of any easement that was obvious or meant to be permanent. The plaintiffs appealed.

■ The plaintiffs contend that they are entitled to an easement by implication across the defendants' land for the purpose of ingress and egress. The defendants deny the existence of the alleged easement, arguing that there is no proof as to where on the property it was located or that it even existed at the time of separation of title.

The defendants raised the statute of limitation in their motion to dismiss. Section 1 of "An Act relating to claims to real estate" (Ill. Rev. Stat. 1979, ch. 83, par. 12.1), recodified as section 13—118 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 13—118) places a 40-year limitation on claims to establish an interest in real estate (except adverse possession), unless a statement describing the interest claimed has been filed with the recorder of deeds within 40 years after the claim arises. Section 3(c) (Ill. Rev. Stat. 1979, ch. 83, par. 12.3(c)) excepts "any easement or interest in the nature of an easement, or any rights granted, reserved or excepted by any instrument creating such easement or interest, the existence of which such easement or interest is apparent from or can be proved by physical evidence of its use, whether or not such physical evidences of its use are visible from the surface ***." On appeal, the defendants suggest that the claimed easement, if it arose at all, arose too long ago (125 years before the action was filed) to be allowed. However, the defendants apparently abandoned their statute of limitations defense, as no further mention is made of it. The statute of limitations bar is an affirmative defense and may not be considered on appeal if not presented to the trial court or if waived. See *Lawson v. Hill* (1979), 77 Ill. App. 3d 835, 848.

The defendants also state that the defendants and their predecessors in title have held their property adversely to any right that the plaintiffs might have and in excess of 20 years, arguing that if an easement ever did exist it was destroyed by adverse possession. Although an easement by implication may be extinguished by adverse possession, the doctrine of adverse possession operates as a statute of limitation and therefore is an affirmative defense. It must be specifically pleaded, alleging the necessary and constituent elements of pos-

session, or it is waived. *Luthy v. Keehner* (1980), 90 Ill. App. 3d 127, 132-33.

■■■ The essential elements for an easement by implication are well established. (1) There must be common ownership of the land followed by a separation of title. (2) Before the separation occurs, the use giving rise to the easement must have been long continued, obvious, or manifest, to a degree that shows permanency. (3) The use of the claimed easement must be necessary to the beneficial enjoyment of the land granted or retained. (*Sheehan v. Sagona* (1958), 13 Ill. 2d 341, 345.) However, the law does not require a showing of absolute necessity, and it is sufficient that the easement be reasonable, highly convenient, and beneficial. (*People ex rel. Helgeson v. Hackler* (1961), 21 Ill. 2d 267, 271.) Thus when one portion of an estate derives a benefit and advantage from another, of a permanent, open, and visible character, when that portion is severed, the grantee takes that portion with all the benefits and burdens that appear to belong to it (*Gilbert v. Chicago Title & Trust Co.* (1955), 7 Ill. 2d 496, 499), and there arises by implication of law a grant of the right to continue such use even though such grant is not reserved or specified in the deed (*People ex rel. Helgeson v. Hackler* (1961), 21 Ill. 2d 267, 270). Whether an easement by implication was created must be determined as of the time of severance of title. *Walker v. Witt* (1954), 4 Ill. 2d 16, 20.

■ It is the burden of the party claiming an easement to show the facts necessary to create an easement by implication. (*Rexroat v. Thorell* (1982), 89 Ill. 2d 221, 229.) Thus the plaintiffs in the instant case must have established the requisite elements of an implied easement. The common ownership of the parcels and the subsequent severance are not disputed, although the defendants suggest that the common ownership was too remote in time to invoke an easement 125 years later. The conditions that the use exist at the time of separation of title and it be sufficiently important to the beneficial enjoyment of the land are at issue.

■■ The plaintiffs candidly concede that, due to an obvious dearth of witnesses to the use of the land from 1846 to 1854, they are unable to prove that the common owner, Daniel Stormer, used what is now the defendants' property to reach what is now the plaintiffs' property or even that he ever was on the property or ever used it at all. Rather, they urge the court to infer that such a use existed. They argue that there are no natural barriers between the two tracts and that it is logical to conclude that Stormer approached the northeast portion of his land (now the plaintiffs') through the rest of his own property (now the defendants'), rather than from the north through

land belonging to others, particularly in view of the impediment presented by the creek. However, as the defendants note, the plaintiffs also have failed to offer evidence as to when the township road to the west of the defendants' property was built, or what road system, if any, existed in 1854. Without some indication as to why Stormer would have approached his land from the west, it could just as easily be surmised that his access was from the east and that he had to traverse what is now the plaintiffs' five acres to get to what is now the defendant's land, which is just the reverse of what is the plaintiffs propose. Thus, without more, the inference of use that the plaintiffs seek cannot be drawn. (See *Swieton v. Landoch* (1982), 106 Ill. App. 3d 292, 300 (implied easements cannot be raised upon meager facts or in the absence of facts).) However, proof of prior use is not required when the land presently could not be used, absent the easement, or could not be used without disproportionate effort and expense. (*Miller v. Schmitz* (1980), 80 Ill. App. 3d 911, 914.) This requires a determination of the third condition.

■■ The third condition is that the use be sufficiently necessary to the beneficial enjoyment of the land. Where available alternatives exist that afford reasonable means of ingress and egress, easements by implication should not be sanctioned. (*People ex rel. Helgeson v. Hackler* (1961), 21 Ill. 2d 267, 270.) The plaintiffs argue that their alternative access to their five acres from the north is no longer feasible in that the quarry road has deteriorated, it crosses bottom land that is subject to flooding, it is not elevated for drainage to insure passage, and without a permanent bridge the creek is impassable at times. The plaintiffs further state that to improve and maintain the quarry road adequately, they would incur disproportionate expense. They note that the quarry road route traverses the lands of strangers and express concern about possible future problems concerning that access. The defendants argue that the quarry road access is adequate for the plaintiffs' purposes, that the evidence shows the road to be passable year-round, and that there is no economic justification for recognizing an easement in that a road across the defendants' property probably would cost more than maintaining the quarry road route. The defendants also note the potential for problems with their farming operation (*e.g.*, livestock getting loose and being blocked from water supply) if an easement is exercised.

■■ *Miller v. Schmitz* (1980), 80 Ill. App. 3d 911, upon which the plaintiffs heavily rely, is quite similar to the instant case. In *Miller*, the plaintiff's land was bisected by a creek that separated it into a western parcel and an eastern parcel and was bordered on the west

by a township road and on the east by the defendant's land. The parties' land had been owned by a common grantor, who divided the tract in 1874. There was no evidence concerning the common grantor's use of the property or his means, if any, of traversing the creek. It was established that the land was all farmland and had been farmed before 1900. The plaintiff's predecessor in title who bought the plaintiff's land from the common grantor had built a wooden bridge across the creek in order to reach the eastern parcel of his land, but the bridge was later destroyed. The court stated that, prior to the construction of the bridge and during the time of unity of ownership, it appeared that the portion of the land east of the creek would have been accessible only from the east, so an easement would have been created at the time of severance. The court noted that when an owner of land conveys a parcel thereof that has no reasonable outlet to the highway except over the remaining land of the grantor or over the land of strangers, an easement by implication exists, citing *Walker v. Witt* (1954), 4 Ill. 2d 16, 23, and also that an easement may lie dormant for an extended period of time while the owner of the dominant estate has permissive access to his land by other means, citing *Finn v. Williams* (1941), 376 Ill. 95, 99. The *Miller* court concluded that the element of necessity was present and upheld the easement by implication. In the case at bar, in light of the testimony that the quarry road was accessible year-round, and that the creek was passable except during infrequent flooding, and since there was evidence that improving and maintaining the current access would not be disproportionately expensive, the trial court's finding that the plaintiffs have a viable alternative should not be disturbed. (See *Neely v. Coffey* (1979), 76 Ill. App. 3d 37, 41 (a trial court's decision will not be disturbed unless it is against the manifest weight of the evidence).) This distinguishes the case from *Miller*, where a bridge was unquestionably necessary to traverse the creek (40 feet wide, six feet deep) and the cost to construct a bridge was quite high, but the easement provided access without necessitating substantial expenditures. As to whether there is a reasonable alternative access, not only have the plaintiffs failed to demonstrate the requisite degree of necessity as to the present use of the land, but they also have not shown the necessity for the use when the alleged easement would have arisen, in 1854.

However, the doctrines enunciated in *Finn v. Williams* (1941), 376 Ill. 95, which was relied on in the *Miller* case, are more in line with the present case. In *Finn*, our supreme court held that, where the plaintiffs' land was entirely surrounded by property of

strangers and the land from which it was originally severed (belonging to the defendant), a right-of-way easement of necessity was necessarily implied in the conveyance severing the two tracts and passed by *mesne* conveyances to the plaintiffs. The fact that the original grantee and his successors in interest were permitted ingress to and egress from their property over the surrounding land of strangers was deemed immaterial. The court further stated that, if there has at one time been unity of title, the right-of-way by necessity may lie dormant through several transfers of title and yet pass with each transfer as appurtenant to the dominant estate and be exercised at any time by the holder thereof. (376 Ill. 95, 99.) However, it appears that the holder may only exercise the easement when necessary.

██ In *Finn*, the plaintiffs alleged that the common owner used the access they claimed as an easement, but the court did not address whether they proved such use. However, the finding that an easement existed seems to be based on the locked-in position of the parcel of land and its lack of other access except over the property of strangers. Thus, proof of such an easement could be accomplished by showing the position of the allegedly dominant tract relative to access to a public right-of-way. In the instant case, although it is agreed by both parties that the plaintiffs' possible routes are over the lands of strangers or over land formerly owned in common, the plaintiffs have not shown that in 1854 these conditions existed. Again, they do not even address the question of where the nearest public right-of-way was at that time. Furthermore, no evidence was offered showing the chain of title to the land to the north and east of the five-acre tract back to 1854. If, for example, the land had been owned by the purchaser of what is now the plaintiffs' land and there had been an access through it to a public road, no easement of necessity would have arisen.

Even if the plaintiffs had sufficiently proved the landlocked nature of their property under *Finn* standards, *Finn* suggests that a dormant easement of necessity may not be reactivated absent a showing of present necessity as well. The plaintiffs argue that they have only a permissive use of the quarry road and are concerned that, if permission is later denied, they will have no way of approaching their property. If that did happen, it is also possible that the plaintiffs may have incurred substantial expense in supporting that route that may be compounded if they are then allowed to exercise the dormant easement, as was permitted in such circumstances in *Finn*. No Illinois case dealt squarely with the issue of whether an easement, the existence of which has been proved, may be exercised after a period of dormancy, absent a showing of present necessity. However, in *Finn*

the court stated:

> "The fact that the original grantee and his successors in interest have been permitted ingress to and egress from the forty acres over the land owned by surrounding strangers is immaterial. *When such permission is denied*, as in the present case, *the subsequent grantees may avail themselves of the dormant easement* implied in the deed severing the dominant and servient estates." (Emphasis added.) (376 Ill. 95, 99.)

This conditions the exercise of the dormant easement upon a change in circumstances that would revive the necessity of the easement. (This is distinguishable from cases holding that a change in circumstances cannot create an easement by implication where none existed at the time of separation of title. (See *VanPatten v. Loof* (1932), 349 Ill. 483, 487.)) The controlling circumstances in *Finn*, withdrawal of permissive access, has not occurred here. For the foregoing reasons, the plaintiffs have demonstrated no theory upon which an easement across the defendants' land could be granted.

The judgment of the circuit court of Carroll County is affirmed.

Judgment affirmed.

SEIDENFELD, P.J., and REINHARD, J., concur.