2019 IL App (4th) 180591
NO. 4-18-0591

FILED
June 5, 2019
Carla Bender
4th District Appellate
Court, IL

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| MARCELLA M. HESS and STEVEN L. HESS, | ) | Appeal from the |
| Plaintiffs-Appellees, | ) | Circuit Court of |
| v. | ) | Adams County |
| JEFFREY L. MILLER, as Highway Commissioner of | ) | No. 16MR244 |
| Lima Township, Adams County, IL; JAMES | ) | |
| FRANKENHOFF, as Superintendent of Highway of | ) | The Honorable |
| Adams County, IL; and HUNT-LIMA DRAINAGE & | ) | Mark A. Drummond, |
| LEVEE DISTRICT, | ) | Judge Presiding. |
| Defendants-Appellants. | ) | |

JUSTICE STEIGMANN delivered the judgment of the court, with opinion.
Justices Knecht and Harris concurred in the judgment and opinion.

**OPINION**

¶ 1        In December 2016, Marcella M. Hess and Steven L. Hess (landowners) filed a two-count complaint against (1) Jeffrey L. Miller, the highway commissioner of Lima Township, and (2) the Hunt-Lima Drainage & Levee District (drainage district). In essence, Miller had closed a township bridge which crossed over the drainage district's property. Landowners sought an easement across the vacated bridge. Relying upon *Cook v. Mighell Construction Co.*, 40 Ill. App. 3d 1032, 1038, 353 N.E.2d 43, 48 (1976) (when an "owners' rights are derived from the platting of a subdivision and where the street or a portion thereof is vacated by the municipality, the property owners abutting the vacated street, and those seeking access thereto, have an easement of access"), the trial court granted landowners an easement across the vacated portion of the road and the bridge.

¶ 2    The drainage district appeals, arguing that landowners are not entitled to an easement. We agree and reverse.

¶ 3                              I. BACKGROUND

¶ 4                              A. The Complaint

¶ 5    In December 2016, landowners filed a two-count complaint against (1) Miller and (2) the drainage district. Count I, which the trial court ultimately dismissed with prejudice and is not appealed to this court, sought administrative review of Miller's closure of the bridge and the partial closure of the road.

¶ 6    Count II, which was a request for declaratory judgment, sought an easement across the vacated bridge that crossed the drainage district's levee. (A levee is an "embankment constructed along the edge of a river to prevent flooding." Black's Law Dictionary 918 (7th ed. 1999)). Landowners sought "a common law private and perpetual easement right to use the subject vacated road, which includes the bridge, for the purpose of traveling the same to and from their properties that lie adjacent to the vacated road." Landowners sued the drainage district for an easement because the drainage district owned "the land under which the subject bridge is situated, and by virtue of the subject road vacation and by operation of law, now owns the bridge structure that is affixed to its land." Citing *Cook*, landowners argued as follows:

> "The common law rule in Illinois relative to vacated public roads and abutting landowners affected thereby, is that upon vacation, those landowners maintain a private easement right over and across that vacated road to access their properties. In other words, after a public road is vacated, the adjacent landowners have a continued legal right to traverse the vacated road to get to and from their properties, notwithstanding the general public's right to use the vacated road is extin-

guished."

¶ 7     Within this complaint, landowners explained that they had recently purchased a residence at 510 North 2900th Avenue, Ursa, Illinois. Landowners argued that "no one made them aware that the Lima Township was planning to vacate that section of the township road known as North 2900th Avenue that lies South of, adjacent to[,] and immediately in front of their residence." Landowners noted that in September 2015, Miller "physically closed the subject portion of the public road, including the steel truss bridge that lies over the lands of [the drainage district] by, *inter alia*, cutting the wood oak floor planks at both ends of the bridge."

¶ 8     Attached to landowners' complaint was an "affidavit in opposition to road vacations." Within this affidavit, landowners explained that they "had only two ways to get to our Home: 1) access from the West by way of the subject North 2900th Avenue and its bridge that quickly leads to the hard-paved Bottom Road (the 'Blacktop Road Access') or 2) access from the East by way of North 2900th Avenue and other gravel township roads that eventually lead to Highway 96 (the 'Gravel Road Access')." Landowners explained that the "Blacktop Road Access allows us the most efficient and safe route to get to Quincy, Illinois[,] for our medical, shopping and other needs within approximately 20 minutes from our Home." Landowners further explained that the "Gravel Road Access takes us approximately 35 minutes to get [to] Quincy, Illinois[,] for our medical, shopping and other needs from our Home." Landowners elaborated that elimination of the bridge "would completely eliminate the Blacktop Road Access to our Home, which means of access is the most reasonable, efficient[,] and safe route for us to get to and from Quincy, Illinois[,] because it is hard pavement, dust free[,] and is the quickest route."

¶ 9     Landowners' statements can be better understood with the assistance of Google

Maps (see *Winters v. MIMG LII Arbors at Eastland, LLC*, 2018 IL App (4th) 170669, ¶ 15, 115 N.E.3d 282 (taking judicial notice of an image from Google Maps for the purpose of better understanding the statements made during depositions)):





The "Gravel Road Access"

The "Blacktop Road Access" across the bridge



The drive from Landowners' home to Quincy via the "Blacktop Road Access"



¶ 10      Landowners also attached the warranty deeds they received from the prior landowners. These warranty deeds included a legal description of landowners' property. The legal description did not refer to a subdivision plat. See 765 ILCS 205/1, 2 (West 2016) (discussing the surveying, platting, and recording requirements for subdividing property).

¶ 11      Landowners took their warranty deeds "subject to" the "[r]ights of the public, the State of Illinois, the [t]ownship and municipality in and to that part of the premises in question taken, used or dedicated for roads, streets, alleys or highways." The legal description also stated that the property was "subject to the right of the public for roadway purposes along the existing public roadway." Neither the warranty deeds nor the legal description of the property indicated that landowners had an easement or some other right to cross the vacated bridge.

¶ 12      B. The Drainage District's Motion To Dismiss

¶ 13      In June 2017, the drainage district filed a motion to dismiss. 735 ILCS 5/2-615

(West 2016). The drainage district argued that the rationale of *Cook* applied only when an "owners' rights to a property are derived from the platting of a subdivision." Accordingly, the drainage district argued that landowners were not entitled to an easement "because their rights are not derived from the platting of a subdivision." In September 2017, the trial court denied this motion.

¶ 14                    C. The Hearing on Landowners' Complaint

¶ 15        In February 2018, landowners filed a brief in support of their complaint in which they argued that "*Cook* stands for the proposition that a private easement is created in favor of adjacent landowners of a public road or street that is vacated. In other words, after a public road is vacated, the adjacent landowners have a continued right to traverse the vacated road to get to and from their properties."

¶ 16        Later in February 2018, the trial court conducted a hearing on landowners' motion for declaratory judgment. The drainage district argued that the rationale of *Cook* only applied to platted subdivisions and that landowners' property rights did not arise from a platted subdivision. Landowners argued that whether they acquired their property from the plat of a subdivision was "a technical point without any distinction" and further argued that "when a public road gets closed, those adjacent landowners *** have a private easement right over that road" because "they bought the property reliant on that road."

¶ 17                    D. The Trial Court's Ruling

¶ 18        At the hearing, the trial court concluded that whether landowners rights derived from a subdivision was "a distinction without a difference." The court reasoned that it should not "treat people who live out in the country different than *** people in the city in a platted subdivision." In March 2018, citing to *Cook*, 40 Ill. App. 3d at 1032, the trial court issued a written order which granted landowners an easement across the bridge.

¶ 19        This appeal followed.

¶ 20                              II. ANALYSIS

¶ 21        The drainage district appeals, arguing that landowners are not entitled to an easement. We agree.

¶ 22                    A. Appellees' Failure To File a Brief

¶ 23        We initially note that neither landowners nor Miller have filed a brief in this appeal. A reviewing court will not act as an advocate for a party who fails to file an appellate brief. *Diane P. v. M.R.*, 2016 IL App (3d) 150312, ¶ 9, 55 N.E.3d 208. However, when the record is clear and the claimed errors can be decided without the aid of an appellate brief, a reviewing court should decide the appeal on the merits. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133, 345 N.E.2d 493, 495 (1976). Because these criteria apply here, this court will proceed to the merits of this case.

¶ 24                      B. The Applicable Law

¶ 25        The trial court may grant declaratory relief pursuant to section 2-701 of the Code of Civil Procedure. 735 ILCS 5/2-701(a) (West 2016). "The essential requirements of a declaratory judgment action are: (1) a plaintiff with a legal tangible interest; (2) a defendant having an opposing interest; and (3) an actual controversy between the parties concerning such interests." *Beahringer v. Page*, 204 Ill. 2d 363, 372, 789 N.E.2d 1216, 1223 (2003). When reviewing the trial court's grant of declaratory judgment, our review is *de novo* to the extent that the trial court's order was not based on factual determinations. *Motorola Solutions, Inc., v. Zurich Insurance Co.*, 2017 IL App (1st) 161465, ¶ 17, 83 N.E.3d 1063; *The Reserve at Woodstock, LLC v. City of Woodstock*, 2011 IL App (2d) 100676, ¶ 49, 958 N.E.2d 1100.

¶ 26        "An easement is an individual's right or privilege, for a limited purpose, to either

pass over or use the land of another." *Katsoyannis v. Findlay*, 2016 IL App (1st) 150036, ¶ 28, 51 N.E.3d 939. "The tract of land that is benefitted by the easement is known as the dominant estate (or the easement owner), while the land burdened by the easement is known as the servient estate." *Hahn v. County of Kane*, 2012 IL App (2d) 110060, ¶ 10, 964 N.E.2d 1216. "An easement provides use rights; it does not provide ownership rights or an ownership interest in the land." *Id.*

¶ 27 Easements "can be created only by grant, by implication, or by prescription." *Martin v. See*, 232 Ill. App. 3d 968, 977, 598 N.E.2d 321, 327 (1992). "To acquire an easement by grant, no particular words are necessary, but the words that are used must clearly show an intention by the grantor to confer an easement, and such terms must be definite, certain, and unequivocal." *McMahon v. Hines*, 298 Ill. App. 3d 231, 236, 697 N.E.2d 1199, 1203 (1998). There are two types of easements by implication: easements by necessity and easements implied from prior use. *Smith v. Heissinger*, 319 Ill. App. 3d 150, 153, 745 N.E.2d 666, 670 (2001). "The easement by necessity usually arises when an owner of land conveys to another an inner portion thereof, which is entirely surrounded by lands owned by either the grantor or the grantor plus strangers." *Martin*, 232 Ill. App. 3d at 977-78. "An easement implied from a prior existing use arises by law when one portion of an estate derives a benefit and advantage from another, of a permanent, open, and visible character; when that portion is severed, the grantee takes that portion with all the benefits and burdens that appear to belong to it." *Canali v. Satre*, 293 Ill. App. 3d 407, 410, 688 N.E.2d 351, 353 (1997). "It is the burden of the party claiming an easement to show the facts necessary to create an easement by implication." *Deem v. Cheeseman*, 113 Ill. App. 3d 876, 882, 446 N.E.2d 904, 908 (1983). "To establish an easement by prescription, the use of the way in question must have been—for a 20-year period—adverse, uninterrupted, exclu-

sive, continuous, and under a claim of right." *Nationwide Financial, LP v. Pobuda*, 2014 IL 116717, ¶ 27, 21 N.E.3d 381. "Mere permission to use land cannot ripen into a prescriptive right, no matter how long the permissive use is enjoyed." *Id.* ¶ 43.

¶ 28 The Illinois Highway Code (Code) provides that a highway commissioner has the authority to "[l]ay out, alter, widen or vacate township or district roads as provided in this Code." 605 ILCS 5/6-201.2 (West 2016). The Code further provides as follows:

> "No road shall be *** altered or vacated unless the highway commissioner finds that such alteration or vacation is in the public and economic interest and further finds that any person residing or owning land within 2 miles of any portion of the road proposed to be altered or vacated shall still have reasonable access (but not necessarily a direct route) by way of a motor vehicle or other portable farm machinery commonly used in the area *** after the road is altered or vacated." *Id.* § 6-305.

¶ 29 The general rule is that "when a street is vacated, title to the land on which the street is located becomes absolute in adjacent lot owners and their ownership extends to the middle of the street." *Cook*, 40 Ill. App. 3d at 1034. However, notwithstanding the return of the property to the adjacent landowners, vacation of a street by a municipality does not extinguish rights others have been previously granted in the street. *Id.*; see also *Hamann v. Sumichrast*, 222 Ill. App. 3d 962, 988, 584 N.E.2d 847, 865 (1991) ("vacation of a street by a municipality does not extinguish the owners' rights derived from the plats of [a] subdivision"); *Crain Enterprises, Inc. v. City of Mound City*, 189 Ill. App. 3d 130, 142, 544 N.E.2d 1329, 1336 (1989) ("We hold that the plaintiffs' easement of access *** was not extinguished by the actions of Mound City in *** vacating Commercial Avenue, absent any affirmative action by the city to condemn the

- 10 -

plaintiff's easement rights.").

¶ 30    In *Cook*, 40 Ill. App. 3d at 1033, the plaintiffs sued to prevent Mighell Construction Company from restricting access to a road which had been vacated by the city. The Second District created a diagram of the properties, which is set forth below:



¶ 31    The properties were located in the Gilbraith subdivision that was platted in 1869. *Id.* Also in 1869, VanBuren Avenue "was dedicated to public use" by the City of Dixon. *Id.* at 1035. In 1887, the city vacated VanBuren Avenue from First Street up to the railroad tracks. *Id.* In 1975, Mighell, the owner of the property located from First Street up to the railroad tracks, erected a barrier at the southern end of VanBuren Avenue. *Id.* at 1033. The adjacent landowners

sued to prevent Mighell from obstructing VanBuren Avenue. *Id.*

¶ 32     Ultimately, the trial court granted the plaintiffs' request. *Id.* at 1032. On appeal, the Second District noted that "when a street is vacated, title to the land on which the street is located becomes absolute in adjacent lot owners and their ownership extends to the middle of the street." *Id.* at 1034. However, because the plaintiffs' property was derived from a subdivision, the court concluded that

> "where the owners' rights are derived from the platting of a subdivision and where the street or a portion thereof is vacated by the municipality, the property owners abutting the vacated street, and those seeking access thereto, have an easement of access to their properties which is not extinguished by the action of the municipality in vacating the street in question." *Id.* at 1038.

¶ 33     In so concluding, the Second District relied upon several cases from the Illinois Supreme Court. See *id.* at 1034-37 (citing *Gerstley v. Globe Wernicke Co.*, 340 Ill. 270, 278, 172 N.E. 829, 833 (1930) (when an "owner of an estate has divided it into different parts" and created "lots and alleys or ways" and has "arranged them that one part derives an advantage from another *** and has afterwards sold a part of the property, the purchaser takes the part sold with all the benefits and burdens which appear at the time of the sale"), and *Trustees of Schools v. Dassow*, 321 Ill. 346, 353, 151 N.E. 896, 899 (1926) ("as against the owner of a platted tract and those who claim under him, parties purchasing lots with reference to the plat are entitled to have the streets designated thereon remain open")). The Second District also relied upon *Wattles v. Village of McHenry*, 305 Ill. 189, 192, 137 N.E. 114, 116 (1922), where the Illinois Supreme Court reasoned as follows:

> "No law is better settled in this State than that which controls this case.

- 12 -

Where the owner of land lays it out in lots and blocks and makes and exhibits a plat thereof showing streets and alleys and sells some of the lots with a clear reference to the plan, the purchaser acquires as appurtenant to the lots every easement, privilege and advantage which the plan represents as belonging to them as a part of the platted territory. This privilege is not limited to the purchaser, but is a right vesting in the purchaser that all persons whosoever, as their occasion may require, may use the streets, alleys and other public places according to their appropriate purposes. The sale and conveyance of lots according to a published plat implies a grant or covenant to the purchaser that streets, alleys and other public places indicated as such upon the plat shall be forever open to the use of the public, free from all claim of interference of the proprietor inconsistent with such use."

¶ 34 In *Rexroat v. Thorell*, 89 Ill. 2d 221, 433 N.E.2d 235 (1982), the plaintiffs argued that they had an easement across an abandoned road which crossed the defendant's land. The supreme court created a diagram of the properties, which is set forth below:



¶ 35　　　　The plaintiffs owned a farm that was divided by Spring Creek. *Id.* at 224-25. On the eastern side of the creek were seven tillable acres. *Id.* at 224. The plaintiffs could theoretically access their seven acres by crossing the creek. *Id.* at 225. A public highway bordered the southern edge of the plaintiffs' property, and the plaintiffs had "reserved a 16-foot easement" by which they could access their seven acres from the southern highway. *Id.* The defendant's property was directly east of the plaintiffs' seven acres. *Id.* at 224. An "old road" connected the plaintiffs' seven acres to an eastern public highway. *Id.* at 225. However, this old road had apparently been abandoned and crossed the defendant's property. *Id.* at 226. The plaintiffs believed that (1) the old road was the best way to reach their seven acres, (2) it would be too costly to improve the reserved easement, and (3) it was impractical to cross Spring Creek. See *id.* at 228.

¶ 36　　　　The plaintiffs, in pertinent part, argued that (1) the old road was a public highway or, in the alternative, (2) that if the old road was no longer a public highway, then a private easement of necessity arose after the abandonment of the road. *Id.* at 226. The trial court con-

- 14 -

cluded that (1) the old road was an abandoned public highway and (2) a private easement did not arise after its abandonment. *Id.* at 226-27. The Third District reversed, concluding that "the abandonment of the public roadway, under the facts of the case at bar, has created a private easement in the roadway benefiting the plaintiffs' land." *Rexroat v. Thorell*, 90 Ill. App. 3d 311, 315, 413 N.E.2d 1, 4 (1980). The Third District further concluded that "the fact that alternative means of access may be possible *** does not alter our decision. The plaintiffs' rights to an easement implied by law need not be based on absolute necessity." *Id.*

¶ 37            The Illinois Supreme Court reversed the Third District. *Rexroat*, 89 Ill. 2d at 231. The supreme court identified the issue as "whether plaintiffs have acquired a private easement in the old road from reasonable necessity by virtue of its abandonment as a public highway several years prior to the time they purchased their land." *Id.* at 228. The court noted as follows:

> "Although title to the land vests in the owner of the fee [following the abandon-
> ment of a road], it is subject to the rights other landowners may have in the street
> as the necessary means of access to their property. [Citations.] It is thus recog-
> nized that the only easements which survive or arise are those reasonably neces-
> sary for means of ingress and egress." *Id.*

¶ 38            The court further noted that "an easement by implication is not sanctioned if available alternatives affording reasonable means of ingress and egress exist [citations]." *Id.* at 230-31. The court reasoned that the plaintiffs "presented some evidence tending to establish that it would have been costly" to improve their property so that they could reach the seven acres without using the old road. *Id.* at 231. However, the court ultimately concluded as follows:

> "[T]here was no evidence presented as to the unavailability of alternative routes at
> the time the road was abandoned by the public. Indeed, one witness testified that

in 1937 the ford in the creek provided good access but that the creek had substantially changed over the years. Moreover, even the evidence presented by the plaintiffs as to the cost and effort necessary to provide an alternative means of access from their own land was disputed by defendant, who stated that the cost and effort in fording the creek was minimal, and the trial court, while not directly deciding the question, appears to have resolved this issue against the plaintiffs. We thus hold that plaintiffs failed to establish that the use of the old roadway at the time of the public abandonment was essential to the beneficial enjoyment of the land now owned by the plaintiffs, and, therefore, a private easement did not then arise and does not now exist." *Id.*

¶ 39                                    C. This Case

¶ 40            In this case, the township closed the bridge adjacent to landowners' house. As landowners conceded below, this meant that the drainage district became the owner of the bridge. However, citing *Cook*, landowners argued that this closure created "a common law private and perpetual easement right to use the subject vacated road, which includes the bridge, for the purpose of traveling the same to and from their properties that lie adjacent to the vacated road." Landowners further argued that whether they acquired their property from the plat of a subdivision was "a technical point without any distinction" because "when a public road gets closed, those adjacent landowners *** still have a private easement right over that road." The trial court agreed and, citing *Cook*, granted landowners' request for an easement.

¶ 41            First, we conclude that the rationale of *Cook* does not apply to the facts of this case. In *Cook*, the Second District concluded as follows:

        "*where the owners' rights are derived from the platting of a subdivision* and

where the street or a portion thereof is vacated by the municipality, the property owners abutting the vacated street, and those seeking access thereto, have an easement of access to their properties which is not extinguished by the action of the municipality in vacating the street in question." (Emphasis added.) *Cook*, 40 Ill. App. 3d at 1038.

¶ 42 The existence of a subdivision plat is legally significant because "[t]he sale and conveyance of lots according to a published plat implies a grant or covenant to the purchaser that streets, alleys and other public places indicated as such upon the plat shall be forever open to the use of the public." *Wattles*, 305 Ill. at 192. Unlike in *Cook*, landowners' property rights did not derive from a subdivision plat. Accordingly, *Cook* does not apply to this case, and the trial court erred by relying upon it.

¶ 43 Second, we conclude that *Rexroat* is applicable to the facts of this case. In *Rexroat*, 89 Ill. 2d at 230-31, the Illinois Supreme Court reasoned that the plaintiffs did not acquire an easement by implication across an abandoned road because there were other reasonable alternative paths to reach their seven tillable acres. The court held that "the only easements which survive or arise are those reasonably necessary for means of ingress and egress" and that "an easement by implication is not sanctioned if available alternatives affording reasonable means of ingress and egress exist [citations]." *Id.* at 228, 230-31. Accordingly, because the plaintiffs had other reasonable means to reach their seven acres, the court concluded that the plaintiffs "failed to establish that the use of the old roadway at the time of the public abandonment was essential to the beneficial enjoyment of [their] land *** and, therefore, a private easement did not then arise and does not now exist." *Id.* at 231.

¶ 44 In this case, landowners attached an affidavit to their complaint in which they

- 17 -

stated that they had only two ways to reach their home: (1) the blacktop road access and (2) the gravel road access. Landowners further explained that it would take "approximately 20 minutes" to reach Quincy from the blacktop road access. They further stated that it would take "approximately 35 minutes" to reach Quincy from the gravel road access. Landowners argued that the blacktop road access was "the most reasonable, efficient and safe route *** because it is hard pavement, dust free and is the quickest route." Although we understand the inconvenience that this bridge closure has caused, we conclude that the gravel road access is a reasonable means of ingress and egress for landowners to reach their home. See *id.* at 230-31. Accordingly, landowners fail to establish that the vacated bridge is essential to the beneficial enjoyment of their land, and therefore, they do not have an implied easement across the vacated bridge. *Id.* at 231. Moreover, based on the record, there is no other basis to affirm the trial court's order. Accordingly, we reverse the trial court's order granting landowners an easement.

¶ 45                                    III. CONCLUSION

¶ 46            For the reasons stated, we reverse the trial court's order.

¶ 47            Reversed.