JOHN L. EVANIK *et al.*, Plaintiffs-Appellants, *v.* DONALD JANUS *et al.*,
Defendants-Appellees.

Fourth District   No. 4—83—0130

Opinion filed December 22, 1983.

476

J. William Lucco, of Mudge, Riley & Lucco, of Edwardsville, for appellants.

J. Richard Meno, of Denby, Dobbs, Meno & Bloomer, of Carlinville, for appellees.

PRESIDING JUSTICE MILLS delivered the opinion of the court:
An easement?
The trial court said, "No."

We affirm.

The Evaniks brought an action seeking a mandatory injunction, declaratory judgment and damages resulting from the alleged obstruction of an easement across the Janus' property.

The trial court entered judgment for defendants across the board—denied injunction, denied existence of an easement, refused damages.

The circuit court was right.

## I. THE FACTS

This case concerns two parcels of land in Macoupin County which share a common boundary. (To aid the reader, a map of the land in question in included and made a portion of this opinion.) The north boundary line of the Evanik property is the south boundary line of the Janus land. At issue is access to Evanik property. Prior to April 1980, Evanik's predecessors used a road which crossed Janus' property. The branch of the road leading to Evanik property was plowed under by the Januses at about the same time that the Evaniks purchased their land. This suit was filed shortly afterwards.

A hearing was first held, seeking a temporary injunction. It was denied. There followed a bench trial seeking a permanent injunction and damages.

The evidence is both prolix and tedious, but clearly necessary for a full understanding of the case. The two parcels were at one time owned by Elias Dorsey. Dorsey had received the property by United States patent on August 10, 1835. He divided the property equally between his two sons by a will which was probated in 1872. William Evanik, plaintiff herein, bought the southernmost parcel on August 9, 1980, for the sum of $25,000. On May 10, 1980, John and William Evanik had petitioned the court for a preliminary injunction. Members of the Evanik family had lived on the southern parcel of land since the late 1920's. At least since 1952, the only road leading to the property was one which exited from Illinois Route 138 to the north of the property and across the Janus property. The road was composed of a slag base topped with large rocks. The road bed is flat from where it comes off Route 138 and stays flat to the Evanik property. It sits on high ground with a ravine on either side. John Evanik had visited the land at least 100 times and had never heard of, or knew of, any other road or access to his property. Thiere is a field road which runs south from a garage on their property. That road has a slag base but is grown over with grass and mostly washed away. The southern part of the property has an eight-foot-deep creek running through it. There is no bridge across the creek and a car could not be driven across it. The White City/Mt.

Olive Road is south of the southern boundary of the Evanik land but no road connects the property to the road.

Evanik admitted that he was not 100% sure that the road from the north ever crossed anyone's property but the Januses. He acknowledged that prior to purchasing the property, he had gotten an opinion letter concerning the property which indicated that there was nothing in writing about easements. When he purchased the property in August 1980, he was aware of problems with access and had heard from his mother that his aunt had always been afraid that the road would be plowed up.

Florence Lopinski was the daughter of John Evanik's aunt and uncle. She was familiar with the property and lived there with her parents for a period of years beginning in 1928. She recalled a roadway leading from the farm to the northwest but since Illinois 138 was not yet built, the main road at that time was the Mt. Olive Township Road. There was no improved road leading south to the Mt. Olive Road. Her parents were using the private road to the north when the Januses bought the adjacent property. The large creek on the south part of the property had a bridge across it at one time. The bridge had not been in existence since the 1930's. None of the field roads were ever graveled.

Mrs. Lopinski had been named administrator of her mother's estate and had overseen the sale of the farm. The property was appraised at $25,000 and was sold for that sum to John Evanik, the highest bidder. Donald Janus bid $22,500 for the property.

Mrs. Lopinski's parents owned a second road which came from the crossroads at Sawyerville to the west. While most of the access to the farm was from the north, there was southerly access available through the field. During cross-examination, the following colloquy occurred between the witness and the bench:

"THE COURT: *** When you say that the main access was out of the north you're talking about the road that we're concerned with here?

A. Yes.

THE COURT: Is that right?

A. Yes.

THE COURT: Well, also while we're talking about this field road can you in dry weather, could you go from the farmhouse, well, and get out of the farm over the field road in dry weather?

A. Do you mean the extra piece of property that my father owned, is that what you're talking of?

THE COURT: I have been hearing that the only way that you could leave your father's farm was over the road that we're

talking about?

A. Yes.

THE COURT: The road that's been plowed up?

A. Uh-huh.

THE COURT: Was there any other way ever that you knew of where you could leave your father's farm by way other than this road that's been plowed up?

A. Well, just a field road.

THE COURT: Okay now—.

A. In the earlier years.

THE COURT: Okay. The field road when it was dry would take you where?

A. To the Mount Olive Township Road.

THE COURT: Okay. And in using the field road would you have to cross this bridge that you said used to be a bridge over one of the creeks, alright is that still there?

A. No it's been gone for years.

THE COURT: When you say years, how long has it been gone?

A. About 40.

THE COURT: For the last 40 years could you exit your father's farm by any other road than the one that was plowed up?

A. No.

THE COURT:  Okay, you may proceed."

Under further cross-examination, Mrs. Lopinski stated that she had refused to tell the Januses of the Evaniks' higher bid because she knew that the heirs would not sell the property to them. Prior to the final sale, she had inquired about acquiring an easement from the Januses.

Donald Janus testified that after Florence Evanik died, he went to Florence Lopinski and told her that he wanted to purchase the property and would act to block the access to the property if he were denied. In a conversation with Mrs. Lopinski's husband, Janus said that he wanted to avoid plowing the road at all cost, whereupon he was told that the Lopinskis understood the problem and that he had a right to plow it up. He personally plowed it under a couple of days after he heard that the Evaniks were going to get the property through the estate. Janus stated that he had made a second offer of $25,000 to Mrs. Lopinski, but on rebuttal she stated that the only offer she had received from the Januses was $22,500. Janus indicated that he knew of a field road leading south to the White City/Mt. Olive blacktop and this testimony was corroborated by the defendants' final witness, Edward

Janus, who also stated that he had seen farm machinery using the southern road. This concluded the testimony at the hearing for the temporary injunction. It was denied on May 28, 1982.

The bench trial seeking the same relief and damages took place September 13 and 14, 1982. Milda Dingerson was the first witness. She testified that she was born in 1903 on land that was now owned by the Januses. She stated that the Evanik property was previously owned by the Purdy family. She knew of a dirt, field road which went south from the Purdy's to intersect the White City road on Madison Cox' land. In her opinion, the south road was passable by car even though it crossed a creek and there was no bridge. The northern access was used much more than the southern access and the road was there for everybody to use. On cross-examination, Mrs. Dingerson stated that up until Route 138 was constructed, the only way to get across Cahokia Creek (shown on the map to the east of the property) was to go south to the White City/Sawyerville road. She answered affirmatively when asked if the entrance to the White City/Sawyerville Road was on the Purdy's property but then indicated that she didn't know too much about their property and wasn't sure how they got to the road. She also knew that there was a path going off to the west from the farm to Sawyerville. She knew that the property was eventually sold to the Marasti family.

On redirect examination, Mrs. Dingerson said that the southern access was used by farmers for their farming machinery. In her opinion, it would have been difficult to drive a car over the southern road since it was full of chuckholes and never cindered because they feared the cinders would wash into the field.

The next witness called was Victor Marasti. He testified that his parents bought the Dingerson property in 1942. He had first seen it in 1945. To get to the Evanik property in 1945 it was necessary to pass through a pasture which was fenced but had gates. He knew of the southern road but it didn't provide a way off the Evanik's property and was little used, generally by horsedrawn wagons. He and his sister had sold their land to Ed Janus in 1947. There was never any talk about use of the northern road by either the Januses or the Evaniks.

On cross-examination, Marasti stated that he had no knowledge of the property, its use or ownership prior to 1945. He had never seen the Evaniks use the south road but had seen a neighbor use it. The Marastis owned the entire tract that the north road crossed.

The next witness was Anthony Lopinski. He said that he was the husband of Florence Lopinski, whose maiden name was Evanik. He had known of the northern access road to the farm since 1937 but had never known of any southern access to the White City Road. He stated

that if you go south from the farm, you end up walking across country. He was on the property when Don Janus plowed the road under and was also on the property on an occasion when Janus came over with a chainsaw to drop a tree across the road he had plowed.

Ray Dees testified that he was 69 years old and the nephew of Carl and Florence Evanik. He stated that he had stayed with the Evaniks when he was going to the eighth grade in Sawyerville and knew of one or two other roads off the property. Dees stated that there was no roadway to the south but there was something built across the creek so his uncle could farm the bottomland.

The last witness to testify in Evaniks' case in chief was John Evanik who testified to the contents of an abstract of title to the property which he now owned. He indicated that he had been unable to use the land after its acquisition since the only method of access is by walking one-quarter mile to the property across other people's land. At the time of the purchase, he thought he was buying property with roadway access and would not have bought it if he had known that there was none. He had taken one load of repair materials onto the property but had been unable to make any further repairs because the road leading to the property was plowed under and the gates on the remaining road were locked. The first time he saw the abstract of title was August 10, 1980, when he paid for the land. Mrs. Lopinski had never indicated any problems with the roadway.

On cross-examination, Evanik stated that he had tried to find out if there was a road to the south connecting with the White City/Sawyerville Road but had not driven it up to their fenceline. Don Janus had let him use the northern road once before he plowed it under. At this point the Evaniks rested their case in chief.

The first witness called by the defense was Thomas Gazda, a civil engineer who was the Macoupin County Superintendent of Highways. Testifying from a plat map dated 1938, Gazda pointed out what appeared to be a road running east and west along the southwest border of the southwest quarter of section 5, then a short distance west to the northeast corner of section 7, then to an intersection at the southeast corner of the northeast quarter of the northeast quarter of section 7. The road ran through the corner of property labeled "J. Smith 23.5 acres." Gazda then identified a U.S. Geological Survey Map which had been updated in 1949. The map showed a low-grade road in the same vicinity as the road he had previously indicated.

On cross-examination, Gazda testified that the maps he had used did not show private roads and that he wouldn't guarantee that all the roads depicted on the map would be there today. He further testified

that a branch of Cahokia Creek appears to intersect the unimproved dirt road he had previously identified.

The next witness was Rosalie Lowe, the niece of Florence Evanik and an heir of her estate. She testified to a conversation she had had with Florence Lopinski on February 19, 1980. The gist of the conversation was that Rosalie was disappointed with the low amounts being bid for the land. Florence Lopinski responded that there were lots of problems including no right-of-way to it.

Ann Janus testified that she was 67 years old and familiar with all the property in question. She knew of a north-south road running from the Evanik property to an east-west roadway which connected White City and Sawyerville. The south roadway was used until Route 138 was opened to the north of the property. The road was maintained until 1945 or 1950 by road commissioner Maxtell through the use of a road grader.

On cross-examination, Ann Janus said she knew of two roads, "one came from right behind the coal mine and you went through the coal mine and the other road had a bridge over it, it was the White City cinder road or something and it went from White City to Route 4 and it turned in going south about, I guess two or three city blocks west of the bridge, went straight to Evanik's farm." She stated that everyone used the road to the south before Route 138 was opened. She further stated that there is a creek on the southern part of the Evanik's farm which at one time had a bridge across it. The culverts which were under the bridge are still there and sturdy, but the bridge platform is now missing. She testified that today she would "be able to go along the timbers very nicely all the way to the Evanik's property because the Evanik's property touches the state road." She said that while the road is a farm road, it drains well and there would be no need to cross anyone else's property to get to the paved road. She stated that the Horns own the property on the other side of the paved road. The north-south road was entirely on the Evanik's and the Janus' land. The Januses then rested their case in chief.

The Evaniks put on two witnesses in rebuttal. Florence Lopinski testified that the road going south from the Evanik property has no bridges and might have no culverts. John Evanik identified an aerial street map of Sawyerville, Illinois, which showed no roads in the southeast corner where his property is located. This concluded the evidence.

The trial court issued an opinion letter on October 21, 1982, finding that the Evaniks had failed to prove either an easement by prescription or an easement by implication. Rather, the Evaniks had shown only a permissive use of the road, which was fatal to the theory of a prescrip-

tive easement. And they had not proved the existence of an easement by implication since there was proof of an alternate means of access and no proof of the existence of an easement at the time the parcels were originally severed.

After the presentation and hearing of the Januses' post-trial motion which raised the issue of "an easement of necessity by implication," the trial court issued a second opinion letter again finding for the Januses. In this letter the court found that the Evaniks had not proved the derivation of title to the parcels from a common grantor, nor had they proved the existence of an easement at the time of severance.

## II. The Issues

Plaintiffs (Evaniks) here raise three issues which they feel require a reversal of the trial court's decision denying an injunction and finding no easement across defendants' property. Plaintiffs *first* urge that the trial court erred in its application of the law of easements to the facts of the case. Their position is that the court applied only the law of easements by implication while paying lip service to the law of easements by way of necessity. The argument relies primarily on the case of *Finn v. Williams* (1941), 376 Ill. 95, 33 N.E.2d 226, and its progeny. Defendants (Januses) respond that the proofs as set out fail to support either a finding of an easement by implication or an easement by way of necessity. They rely primarily on an interpretation of the *Finn* case, plus the cases of *Miller v. Schmitz* (1980), 80 Ill. App. 3d 911, 400 N.E.2d 488, and *Deem v. Cheeseman* (1983), 113 Ill. App. 3d 876, 446 N.E.2d 904. The *second* issue raised by plaintiffs is that the trial court implicitly found the element of necessity lacking by citing the *Finn* and *Miller* cases in its memorandum opinion but finding them inapplicable to the case at bar. The defendants respond that the record supports the trial court's finding of lack of necessity. *Thirdly*, plaintiffs urge that the trial court's finding that the land at issue did not devolve from a common grantor was against the manifest weight of the evidence and requires reversal. Defendants agree that the finding was against the manifest weight of the evidence but urge that this error does not require reversal.

## III. The Law Of Easements

■ Easements are interests in land and can be created only by grant, by implication, or by prescription. (*Chicago Title & Trust Co. v. Wabash-Randolph Corp.* (1943), 384 Ill. 78, 51 N.E.2d 132.) Since there was no grant in the instant case, the easement sought had to have orig-

inated by prescription or by implication.

The facts alleged in plaintiffs' complaint went to the creation of an easement by prescription. That claim has been abandoned in this appeal. The position was not well taken at trial, as much of the evidence at trial showed that plaintiffs' use, as well as that of their predecessors in title, was with the permission of the adjoining landowners and was never based upon any claim of right. The general rule is that a mere permissive use can never ripen into a prescriptive easement. (*Waller v. Hildebrecht* (1920), 295 Ill. 116, 128 N.E. 807.) A permissive use does not establish the necessary element of adversity required for a court to deprive an owner of property of his interest therein. *Rita Sales Corp. v. Bartlett* (1970), 129 Ill. App. 2d 45, 263 N.E.2d 356.

■ Since the easement could not have arisen by prescription, the only way it could have arisen is by implication. The law recognizes two distinct types of easements which are raised by implication. Easements may be raised by implication of law, wherein a common grantor grants a parcel of land over which an easement already exists (see *Cosmopolitan National Bank v. Chicago Title & Trust Co.* (1955), 7 Ill. 2d 471, 131 N.E.2d 4), or by way of necessity wherein a grantor grants a parcel of land which has no access except over the remaining lands of the grantor or the land of strangers. (*Gilfoy v. Randall* (1916), 274 Ill. 128, 113 N.E. 88.) Both of these theories were argued to the trial court and in the following explication we shall focus on the distinctions between the two, while emphasizing the elements which must be proved to allow a court to divest a property owner of an interest in his land under either theory.

### A. Easements by Implication

The plaintiffs put on proof that two parcels of land were at one time owned by Elias Dorsey and were subsequently devised to his two sons in 1874. The earliest date after which any witness could recall the parcels was 1903. Testifying for the plaintiffs, Milda Dingerson testified that upon her earliest recollection the owner of the plaintiffs' (southern) property were using a road across the northern property—as well as a dirt road to the south—as means of access to public highways.

■■ It is well established in Illinois that to prove an easement by implication of law, the parties so asserting must prove: (1) that there was a separation of title from common ownership; (2) that before the separation occurred the use which gave rise to the easement was so long continued, obvious, and manifest that it must have been intended to be permanent; (3) that the use of the claimed easement was highly

convenient and beneficial to the land conveyed. (*Partee v. Pietrobon* (1957), 10 Ill. 2d 248, 139 N.E.2d 750.) The date the unity of ownership ceases is the point of reference in ascertaining whether an easement has been imposed upon adjoining property by a joint owner. (*Cosmopolitan Bank.*) It is equally well established that plaintiffs seeking easements by implication must meet their burden of proof by clear and convincing evidence that at the time of severance the easement was in existence and was intended to be permanent. *Sheehan v. Sagona* (1958), 13 Ill. 2d 341, 148 N.E.2d 795.

In the instant case, plaintiffs offered no proof whatsoever concerning any use of either parcel of land at the time of severance. Without this showing, plaintiffs cannot prevail in seeking an easement by implication of law. Since this is the case, the trial court was correct in its finding that no easement by implication was proved.

As noted by the *Partee* case, a second prerequisite to finding an easement by implication of law is that the parcels devolved from a common grantor. Responding to plaintiffs' post-trial motion, the trial court stated that the parcels did not so devolve. Plaintiffs urge this finding as reversible error, citing *Edwards v. Haeger* (1899), 180 Ill. 99, 54 N.E. 176, for the proposition that the benefits and burdens of an easement pass through subsequent grantees. They cite no cases holding that an incorrect finding of material fact requires reversal in a case such as this. Defendants urge that the trial court's finding that the two parcels of land did not devolve from a common grantor really means that there was no easement in existence at the time of severance. They claim that in this context many courts and lawyers disclaim the existence of a common grantor. They offer no cases in support of this proposition. If in fact there had been no common owner of the two parcels of land, there could under no circumstances be an implied easement.

The record in the case is clear that the two parcels of land were at one time owned by Elias Dorsey and subsequently devised to his two sons. In this light, the trial court's finding of the lack of a common grantor was clearly incorrect. Nonetheless, the rule in Illinois is that while an erroneous finding of a material fact is ordinarily ground for reversal, it is not ground for reversal where regardless of the error there are other findings not inconsistent therewith which are unaffected by the error and are sufficient to sustain the judgment. (See 5B C.J.S. *Appeal & Error* sec. 1786 (1958), citing *Bundy v. West* (1921), 297 Ill. 238, 130 N.E. 709.) In the instant case, the finding that there was no proof of the existence of an easement at the time of severance is not inconsistent with the finding of no common grantor and is sufficient to sustain the judgment. Hence, the error complained of does

not require reversal.

## B. Ways of Necessity

The plaintiffs claim that despite the fact the trial court acknowledged cases dealing with ways of necessity, the court erred in not applying the law of these cases to the proofs as adduced at trial. The trial court's memorandum notes that the evidence showed the existence of more than one road leading from the defendants' property at various times after severance and that under these circumstances there could be no finding of an easement by implication across defendant's land. The court apparently cited *Miller v Schmitz* (1980), 80 Ill. App. 3d 911, 400 N.E.2d 488. Plaintiffs here contend that the finding that there was no easement at the time of severance is immaterial to finding an easement by way of necessity.

A way of necessity is a particular kind of implied easement. The concept was apparently first noted in Illinois in the case of *Gilfoy v. Randall* (1916), 274 Ill. 128, 113 N.E. 88, and later expanded in *Finn v. Williams* (1941), 376 Ill. 95, 33 N.E.2d 226. Plaintiffs rely heavily on the *Finn* case in support of their position. The facts of *Finn* are similar to those of the instant case.

The property at issue in *Finn* was at one time owned entirely by Williams who sold Finn the northwest corner of it. The property purchased by Finn abutted no public roads. At trial, he claimed that the only means of ingress and egress to his property was a road which crossed the remaining property of Williams. Williams denied this. The court found that other private roads had been in existence since the time of the original severance but that those means of access had been closed or were no longer in existence. At the time of trial, the only access to a highway (as indicated by testimony of defendant's witnesses) was a road across defendant's land which was now denied to plaintiff. Based on these circumstances, the trial court found that an easement existed across the defendant's lands. On appeal, the defendant urged that private roads had supplied the plaintiff access to the property for a long period of time and so no necessity was proved either at the time of severance or the time of trial. The plaintiff replied that changed circumstances had created a necessity for a way to a public road and the supreme court agreed.

The court delineated the elements which must be proved before a way of necessity would be found. Whenever a conveyance by severance creates a situation where one parcel of land has no access to a public highway except over the remaining lands of the grantor or the lands of strangers, an easement over the remaining lands of the

grantor is implied in the grant. Further, where such a situation exists, the easement need not be put to continuous use but may lie dormant through successive grantees to be used at any time by a subsequent titleholder. (*Finn v. Williams* (1941), 376 Ill. 95, 99, 33 N.E.2d 226, citing 17 Am. Jur. *Easements* sec. 49, at 127; *Logan v. Stogdale* (1890), 123 Ind. 372, 24 N.E. 135.) The court found that at the time of trial the plaintiff's land was entirely surrounded by the property of strangers and the defendant's land. The land which defendant now owned formed the remaining portion of the tract from which the plaintiff's land had been severed but the present owner was not the original severor. Under these circumstances, the court found that an easement was necessarily implied in the original conveyance severing the two tracts. The easement had passed through all the subsequent conveyances to the current year. The fact that the easement had never been used was deemed immaterial. The court went on to state "[t]he fact that the original grantee and his successors in interest have been permitted ingress to and egress from the forty acres over the land owned by surrounding strangers is immaterial." (*Finn v. Williams* (1941), 376 Ill. 95, 99, 33 N.E.2d 226, 228.) if the other means of access ended, subsequent grantees could avail themselves of the dormant easement implied in the deed severing the original estates. *Finn* marks the starting point for real analysis in this case.

■ Defendants attempt to distinguish *Finn* on factual grounds. We find the attempt unpersuasive. Defendants urge that in *Finn* the plaintiff proved that at the time of severance, due to the topography and location of the only public roadway, the only access available to the plaintiff had to be over the plaintiff's land. They urge that the alternate access routes must have become available only after severance. However, in *Finn*, there is really no way to tell what time the alternate means of access became available. The defendant had pleaded that "since [the land's] severance from her land it is and has been located on a private road leading to the south to a public highway." (*Finn v. Williams* (1941), 376 Ill. 95, 97, 33 N.E.2d 226, 227.) The appellate court found that alternate private ways of ingress and egress had been available to the plaintiff "since" the original severance. The court did not find that the available means of access had been available only after the original severance. The language used does not make clear what relevance the chronology of access has to the decision. We feel that the time at which alternate available access routes became available—and subsequently unavailable—does not serve to distinguish *Finn*, but that the nature of the alternate routes does so.

■ We find the real point which distinguishes *Finn* is the private

nature of the alternate routes available in the case. There is no question about Finn's property being accessed by a public road. However, in the case at bench, one of defendants' witnesses testified that a field road ran south on the Evanik's property and at some previous time connected at their property line, with a township road, which was maintained by the road commissioner. (See map.) The logical inference is that this was a public road. There was also evidence that this public road is currently no longer there, or at least now is so overgrown as to be virtually impassable. We find that a situation wherein a public road which had previously accessed a public highway is no longer accessible is distinct from a situation wherein a private road which had previously accessed a public highway no longer does so.

██ We recognize that the resolution of this issue in this manner calls for resolving close matters of proof at trial. The evidence was very closely balanced with no clear edge to either side as to either the public or private nature of the southern route. This is important because the plaintiff bears the burden of proof in these cases and the proof must be by clear and convincing evidence. (*Sheehan v. Sagona* (1958), 13 Ill. 2d 341, 148 N.E.2d 795.) This court may only overturn the verdict of a trial court if it is against the manifest weight of the evidence. (*Allendorf v. Daily* (1955), 6 Ill. 2d 577, 129 N.E.2d 673.) Since the proofs at trial were close, the decision of the trial court refusing to enjoin the defendants from obstructing access to the plaintiffs' property must stand, the plaintiffs having failed to meet their burden of proof.

██ This posture of judicial noninterference is supported by the policy that courts should be reluctant to step in and reorder bargained-for exchanges. (See Posner, Economic Analysis of Law sec. 1.2, at 10-12 (2d ed. 1977).) Plaintiffs in the instant case bought property which they valued at $25,000 knowing in advance that there were problems with access. While their business judgment may be suspect, their valuation of the premises is unequivocal as reflected by the purchase price which maximized the property's worth since they were the high bidders. If the court were to imply an easement across the defendants' property, an inefficiency would result since it would effectively reduce its value while artificially enhancing the value of the plaintiffs' land. Faced with such an inefficient result, the court should be loathe to find an easement. In accordance with this policy, we recognize that the burden of proof faced by a party seeking a judicial divestiture of a property interest held by another is extraordinarily high and in this case simply was not met.

Other courts have alluded to the difficulties faced by parties simi-

larly situated. In *Deem v. Cheeseman* (1983), 113 Ill. App. 3d 876, 446 N.E.2d 904, the plaintiffs bought a small tract of land in the northeast corner of property owned by defendants. Access to the property had historically been over a quarry road which passed over the property of strangers. Plaintiffs sought a declaratory judgment recognizing an easement by implication over the property of the defendants. Plaintiffs were faced with problems of proof very similar to that encountered by the plaintiffs here. There was simply no way to tell what use was being made of the property at the time of the original severance in the nineteenth century since there were no available maps or witnesses. The court in *Deem* indicates its view that proof of prior use is not required when land presently cannot be used absent an easement. The court goes on to find that if current conditions are such that available alternatives exist which afford reasonable means of ingress and egress, easements by implication should not be sanctioned. Since the quarry road was still in existence, the court refused to imply an easement. However, the court went on to analyze the case in an analysis based upon the principles of *Finn*. Two aspects of this discussion bear on the instant case.

The court in *Deem* notes that the plaintiffs have failed to show either the location of the nearest right-of-way at the time of original severance of title or evidence pertaining to the chain of title to the surrounding land which was now owned by strangers. Both of these seem very relevant facts in proving an easement by way of necessity but are very difficult matters of proof. Neither are tainted with the principles applicable to finding an easement by implication of law. The location of the nearest public right-of-way at the time of severance allows the court to make a more positive inference concerning the necessity of the easement. It shows whether the alleged dominant tenant was landlocked at the time of severance. This proof also allows an inference concerning the intent to create the easement at the time of severance which other courts have held to be an essential element of proof. See, *e.g., Luthy v. Keehner* (1980), 90 Ill. App. 3d 127, 412 N.E.2d 1091; accord, *Lawson v. Hill* (1979), 77 Ill. App. 3d 835, 396 N.E.2d 617.

■■■ Similarly, by proving the chain of title to surrounding property, a party seeking an easement could show that the alleged dominant parcel had never been unlocked by virtue of the purchase of adjoining property which accessed a public highway. In this case, neither of these points were proved by the plaintiff. We do not intimate that this failure alone in this case was adequate to sustain the trial court. However, plaintiffs in the future—seeking to have the court divest an owner of a property right—should bear these two matters of proof in mind.

Finally, we cannot leave this case without touching and discussing the case of *Miller v. Schmitz* (1980), 80 Ill. App. 3d 911, 400 N.E.2d 488. The case generated confusion in the court below and was cited by both parties in support of their dichotomous positions before this court. In *Miller*, plaintiff sought an easement over land owned by defendant which shared a common boundary with his. Plaintiff's property was bisected by a creek which was impassable, making the defendant's property the only convenient access to the eastern one-half of plaintiff's. Both parcels had previously been owned by a common grantor. There was no testimony concerning the common grantor's use of the property. Plaintiff sought an easement by implication over the defendant's land. Defendant argued that plaintiff could not prove actual necessity since plaintiff could construct a bridge across the creek which would give him access to the other half of his property. After reviewing these facts, the court properly set out as a test the requisite elements to prove an easement by implication:

> "Three conditions are essential for an easement by implication: first, ownership of the dominant and servient estates by a common grantor followed by separation of title; second, use of the easement prior to separation in an apparent, obvious, continuous and manifestly permanent manner; and third, that the easement be necessary to the beneficial enjoyment of the dominant estate." (80 Ill. App. 3d 911, 913, 400 N.E.2d 488, 490.)

The court found that two issues required resolution. Only the first issue bears on this portion of the discussion of this case. The court decided that the prior existence of the easement had to be proved. The court found that it could infer that the eastern property had always been used for access to the western property since the creek had always bisected the western property. Under these circumstances, the court reasoned that at the time of the original severance the easement must have been implied across the defendant's property. The court then relied on *Finn* for the proposition that implied easements may lie dormant for extended periods of time while owners of dominant estates have permissive access to their lands across the lands of others. The court went on to cite Restatement of Property sec. 476, comment *g*, at 2012-13 (1944), for the proposition that while "prior use" by the grantor is a relevant factor indicating necessity for the easement, proof of prior use is not required when the land could not be used currently, absent the easement. Moreover, if that land as presently held cannot be used without disproportionate effort and expense, an easement may still be implied on the basis of necessity alone—without reference to prior use.

We feel that *Miller* represents an unusually liberal interpretation of the rules concerning easements. It mixes the principles of easements by way of necessity (dealt with in *Finn*) and the principles of easements by implication of law (dealt with, *e.g.*, in *People ex rel. Helgeson v. Hackler* (1961), 21 Ill. 2d 267, 171 N.E.2d 599). As we have previously noted, our considered opinion is that the two types of easements are created in different ways and result in different liabilities on the owners of the servient tenements. *Finn* indicates that where, upon severance, a parcel of land is left without access to a public road and is surrounded by the properties of strangers or the remaining lands of the grantor, a way of necessity across the remaining lands of the grantor is implied. Where all these elements are proved, *Finn* holds that the easement may be revived after long periods of nonuse upon the finding that alternate (private) means of access are no longer available. Implied easements, on the other hand, arise where two grantees take parcels of land, one of which is burdened by an existing easement. Under these circumstances, there need be no proof of proximity to public roads or proof of chain of title to surrounding lands. There must be proof of the easement at the time of the severance, however. The *Miller* court mixes these two concepts.

In support of its result, the *Miller* court relied on the above-mentioned language from the Restatement of Property which would on its face seem to sanction the mixture of the two concepts. The pertinent portion of the comment quoted refers to the absence of the proof of prior use as not being fatal to proving a present easement. When read out of context, this passage does seem to support the court's position that a plaintiff need not show that an easement was in use prior to the severance in order to sustain its position that present necessity will revive an implied easement. Reading this section fully demonstrates that "prior use" refers to the use which was being made of the dominant parcel of land prior to the severance, not prior use of an easement:

> "If no *use* can be made of land conveyed or retained without the benefit of an easement, it is assumed that the parties intended the easement to be created. \*\*\*
>
> Not only may the implication arise *in favor of the conveyor when a prior use has been made, but it may arise even though no use of the land corresponding to the use claimed had ever been made prior to the conveyance.* \*\*\* Yet, where no use can be made of land conveyed or retained without an easement it will be implied even in the absence of a prior use. If land can be used without an easement, but cannot be used without disproportion-

ate effort and expense, an easement may still be implied in favor of either the conveyor or the conveyee on the basis of necessity alone without reference to prior use." (Emphasis added.) (Restatement of Property sec. 476, comment *g*, at 2012 (1944).)

The examples following comment *g* go on to make clear that the "prior use" terminology refers to the use being made of the land at the time of the conveyance. The examples are limited to the conveyance or retention of land or mineral rights at the time of the conveyance. In these circumstances, the person who made the conveyance or accepted the conveyance retains an easement through the land or to the minerals even though no excavations were being carried on at the time of the severance. In this light, it is clear that the mining activities are the prior use which is referred to in the comment, not the easement.

■■ Application of these examples to the instant case show that the concept of "prior use" seems immaterial to its resolution. There is no question about changed use of the land which creates a new necessity for an easement. There is no proof whatsoever as to any use which was being made of either parcel of land at the time of severance. There is no indication of any use of any easement or any roadway across either parcel of land at the time of severance.

■■ This court is unwilling to accept plaintiffs' invitation to adopt the mixture of concepts of easements by implication and ways of necessity advocated in *Miller*. We find that plaintiffs have failed to prove at least one requisite element in each instance: They failed to prove the existence of an easement at the time of severance, which is required in order to prove an easement by implication of law; and they failed to prove the landlocked nature of their parcel of land at the time of severance, which is required to prove the easement by way of necessity.

■■ While the trial court's memorandum order did not specifically set forth these reasons for its decision, we feel that the record supports the judgment. Since the judgment below is supported by the record, we may affirm the trial court irrespective of the court's assigned reasons. *Farmers State Bank v. Webel* (1983), 113 Ill. App. 3d 87, 446 N.E.2d 525.

Affirmed.

GREEN and MILLER, JJ., concur.

APPENDIX

DIAGRAM OF ROADWAYS

SCALE FOR SECTION,  } Each side large blue squares=20 chains, 80 rods, 1320 feet, area of square 40 acres.
660 Ft.=1 inch  } Each side small red squares= 5 chains, 20 rods, 330 feet, area of square 2½ acres.

Ill. Rte. 138

Janus 40ac.
NE 1/4

plowed
portion

JANUS

Cahokia
Creek

Evanik
40ac.
SE 1/4

W

questioned
access

HORNE

To Sawyerville &
Ill. Rte. 4

White City - Sawyerville Road
(Also referred to as White-City-Mt. Olive Road)

Legend:
  Private roadway ——————
  Township roadway = = = = =
  Paved Public roads ——————
  Cahokia Creek —·—·—·—·—