STEVEN WEHDE *et al.*, Plaintiffs-Appellants, v. REGIONAL TRANSPORTATION AUTHORITY, Defendant-Appellee (American National Bank and Trust Company of Waukegan, as Trustee, Plaintiff).—STEVEN WEHDE *et al.*, Plaintiffs, v. REGIONAL TRANSPORTATION AUTHORITY, Defendant-Appellant (American National Bank and Trust Company of Waukegan, as Trustee, Plaintiff-Appellee).

Second District   Nos. 2—95—1395, 2—95—1479 cons.

Opinion filed October 24, 1996.

Christin Wehde, of Ingleside, appellant *pro se.*

John W. Quinn and John P. Richtman, both of Churchill, Baumgartner & Quinn, Ltd., of Grayslake, for Regional Transportation Authority.

Clayton P. Voegtle, of Voegtle & Lichter, of Libertyville, for American National Bank & Trust Company.

JUSTICE RATHJE delivered the opinion of the court:

This cause of action was brought by plaintiffs, Steven and Christin Wehde (the Wehdes) and American National Bank and Trust Company, as trustee under trust No. 983 (American), to declare their rights to a prescriptive easement in the nature of a crossing over the railroad right-of-way of the defendant, the Regional Transportation Authority, and to enjoin defendant from interfering with same. Plaintiffs additionally sought attorney fees and injunctive relief for violations of both the due process clause of the United States Constitution (U.S. Const., amend. XIV) and section 1983 of the Civil Rights Act (Act) (42 U.S.C. § 1983 (1982)). After a remand for further proceedings, the trial court ruled against the Wehdes but in favor of American. The Wehdes and defendant filed timely notices of appeal and cross-appeal, respectively.

The Wehdes raise several issues on appeal, namely, whether (1) they proved an easement by implication or necessity; (2) they established an easement by prescription over the defendant's railroad tracks; (3) they are entitled to attorney fees pursuant to section 1988 of the Act; and (4) they are entitled to damages.

On cross-appeal, defendant maintains the trial court erred in (1) finding that American is a dominant tenant of a prescriptive easement across defendant's right-of-way and (2) finding that American was entitled to damages and (potentially) attorney fees pursuant to section 1983 of the Act.

In *Wehde v. Regional Transportation Authority*, 237 Ill. App. 3d 664 (1992) (*Wehde I*), this court reversed the trial court's order granting defendant's motion for summary judgment as to the Wehdes' claim and an order granting defendant's motion for judgment at the close of plaintiffs' case. To set the stage for a discussion of the issues in the instant appeal, it is helpful to quote the following pertinent portion of *Wehde I*:

"To defeat [defendant's] summary judgment motion, the Wehdes were required to show that their claim of a prescriptive easement was supported by some factual basis that would arguably entitle them to a judgment in their favor. [Citation.] In support of their claim, plaintiffs presented both affidavits and testimony of the present owners and their predecessors stating their recollection and use of the crossing. [Defendant] contends that the crossing was used with permission, thereby negating the essential element of adversity. However, [defendant] failed to present any evidence to this effect. Although [defendant] did present evidence that the crossing was torn down in approximately 1977 in support of its contention that this action stopped the running of the statutory period, the record is devoid of evidence indicating what party tore down the crossing and any reason for such action. Without more, we cannot conclude that [defendant] claimed the property in such a way that subsequent use of the crossing was permissive. Accordingly, viewing the pleadings, depositions, and admissions on file, together with the affidavits and evidence admitted as an offer of proof in the light most favorable to the nonmoving Wehdes, we find that a genuine issue of material fact exists concerning the adverse, open, notorious, and continuous use of the crossing by the owners of the Wehde Parcel for the statutory period.

We further find, after considering all of the evidence, passing on the credibility of the witnesses, and drawing reasonable inferences from the testimony presented, that [American] has sustained its burden of proving that use of the crossing by the beneficiaries of the Trust Parcel and their predecessors was hostile or adverse,

open and notorious, and uninterrupted for the statutory period. Thus, [American] has sustained its burden of completing its *prima facie* case. Since the record is completely devoid of evidence concerning the origin of the crossing, a rebuttable presumption of adversity has arisen. At this point, [defendant] should have been required to present evidence rebutting each and every element of plaintiffs' *prima facie* case. Accordingly, we find the judgment of the circuit court was against the manifest weight of the evidence." *Wehde*, 237 Ill. App. 3d at 681-82.

It is not necessary to recite the evidence set out in plaintiffs' case, which was ably articulated in *Wehde I*. Accordingly, we will summarize only the evidence presented by defendant.

Prior to defendant's case, Steven Wehde was permitted to testify regarding alleged damages the Wehdes had incurred, based upon the loss of use of their property. Wehde claimed that much of the equipment left on the land was damaged or had become worthless, due to the lack of access to the acreage. He further estimated that the house he planned to build in 1987 or 1988 would have cost approximately $150,000. According to Wehde, the same house would have cost $200,000 to $210,000 to build at the time of the trial's completion.

Robert Schuster testified that he had been the assistant department head of engineering for Metra since October 1987. Schuster stated that he began his railroad career with the Milwaukee Railroad in 1970. From the beginning of his career up to the date of trial, he had been involved with the section of railroad track pertinent to this case. As defendant's assistant department head of engineering, his duties included the planning and supervision of all maintenance work and helping to plan capital projects for defendant's entire railroad system. According to Schuster, he examined the crossing installed by the Wehdes in 1988. Schuster described the specifications for such a crossing, including the type and height of the timber, proper drainage, and the proper type of approach to the crossing. He stated that the Wehdes' crossing did not meet the railroad's specifications. He opined that the crossing's drainage was a "problem." Accordingly, defendant removed the structure in October 1988.

Schuster testified that an order was entered on December 2, 1989, wherein the Wehdes were directed to notify defendant if they wished to remove some or all of the equipment on their acreage across the railroad track. Schuster stated that defendant was never notified by the Wehdes concerning the removal of equipment.

Schuster also testified that, at some time in 1977 or 1978, the entire section of track which included this crossing was "sledded." He explained that sledding was a renewal procedure where all of the

ties and tracks were pulled up, plowed, and reset on a level surface. Ties were replaced as necessary. Schuster stated that small private crossings should have been removed in the sledding process and then replaced with all new ties. According to Schuster, it was defendant's policy to replace all of the crossings that had been removed.

John Pawlowski, the Wehdes' neighbor to the east, testified via evidence deposition. He stated that he had moved onto his property the same year the Muehlfelders acquired the Wehdes' parcel. Pawlowski testified that he did not see anyone use the Wehdes' parcel between 1958 and 1985. According to Pawlowski, before the Wehdes built a roadway from the crossing to the 20-acre parcel, there was not even a pathway along the 20-foot strip.

A substantial portion of defendant's case was comprised of documentary evidence primarily regarding the creation of the farm crossing in 1899 and its existence during the early decades of this century.

On rebuttal, Steven Wehde testified that he had met his neighbor, John Pawlowski, only once, and, at that meeting, Pawlowski had threatened to shoot him if he ever set foot on Pawlowski's land again. Wehde further testified that he rebuilt the crossing in 1987, using the private crossing on Pawlowski's property as a model. The primary differences in these crossings were that the Wehdes secured the ties with a different type of bolt and that the Wehdes put gravel, rather than asphalt, between the ties. Wehde further testified that, when the property was purchased in 1985, a roadway ran along the entirety of the 20-foot strip. The roadway was wide enough for a pickup truck.

Tom Lyon testified that he was one of the beneficiaries of the American trust, along with Richard Sachse and Roy Western. He first acquired his interest in the property in 1976. Lyon stated that in spring 1976, Sachse drove him to the cabin on the property. They crossed over the tracks at the subject crossing, which Lyon described as being built of timber and gravel. He stated that it was "passable by an automobile."

Thomas Muehlfelder testified that he was familiar with the Wehdes' parcel because his father and uncle owned it prior to the Wehdes. He stated that in the early 1970s he had a paper route that took him by the subject crossing on a regular basis. Muehlfelder described the crossing as being made of gravel and wood. A gravel road led to the gate to the trust's property. In the mid-1970s, he used the crossing to go dirt biking and firewood gathering on the Muehlfelder property. Muehlfelder stated that along the 20-foot strip was a dirt path large enough for a truck to drive along.

At the trial's conclusion, the trial court made the following rulings in regard to American's claims:

1. It granted American's claim for declaratory judgment of a prescriptive easement across the railroad's right-of-way;

2. It granted American's motion for injunctive relief and ordered defendant to reinstall the crossing at its preexisting location;

3. It granted American's section 1983 action, awarding American $1 in nominal damages plus costs and permitted American to petition for recovery of attorney fees and costs pursuant to section 1988; and

4. It found that American was entitled to nominal damages and awarded American $1, plus court costs.

In contrast, the trial court ruled against the Wehdes on all four counts.

## AMERICAN'S CLAIM FOR A PRESCRIPTIVE EASEMENT

■ Defendant generally argues that American failed to prove the element of adversity to support its claim of a prescriptive easement. In the first part of this issue, defendant makes the following argument. The origin of the crossing is found in the 1899 deed, which created the subject railroad right-of-way, and the statute for fencing which was in effect when this deed was executed. In reference to a crossing, this deed provided that "the right thereto shall only be that conferred by statute." Defendant contends that this language was sufficient to create an easement. Defendant then maintains that, because the subject crossing came into being as a statutory farm crossing, it remains one to this day. Defendant concludes that American cannot "convert" a farm crossing to another use by prescription and that, accordingly, the evidence regarding a prescriptive period is irrelevant.

American argues, *inter alia*, that, at the time the record first shows a crossing to exist, there is no evidence that a farm was on either side of the crossing. Further, American maintains that the series of deeds admitted into evidence say nothing about a crossing and, therefore, provide no support for defendant's argument. Finally, American argues that there is no absolute right to a farm crossing.

Interestingly, both parties ignore the case law which states that an easement granted for a particular purpose terminates when such purpose ceases to exist, is abandoned, or is rendered impossible of accomplishment. *McCann v. R.W. Dunteman Co.*, 242 Ill. App. 3d 246, 258 (1993); see also *URS Corp. v. Ash*, 101 Ill. App. 3d 229, 236 (1981). Assuming, *arguendo*, that a "farm crossing" existed at some time over the railroad right-of-way, the record is replete with evidence that by the early 1920s there was no need for a farm crossing, as

there was no farmland on the east side of the railroad right-of-way. For example, a railroad track map prepared in 1918 showed that the land directly east of the crossing had been subdivided. Moreover, Bernice Bleeker testified that in the mid-1920s she accompanied her father to houses on Ingleside Avenue, where he was collecting on bills and making deliveries. According to Bleeker, there were four houses in a small subdivision, which was located near the point where Ingleside Avenue ran into the crossing.

This undisputed evidence demonstrates that by the 1920s there was no need for a farm crossing over the railroad right-of-way. Accordingly, at that time, any easement created by the 1899 deed was terminated and has no impact upon our determination of whether American proved adversity during the subject prescriptive period. As the second part of its "adversity" argument, defendant contends that, in presenting its case in chief (*Wehde*, 237 Ill. App. 3d at 678), American put on no evidence of adversity but, rather, simply relied on the presumption of adversity. Further, defendant maintains that it rebutted that presumption with certain documents that it presented in its case in chief.

In response, American argues, *inter alia*, that defendant presented no evidence to rebut the evidence of adversity it presented regarding the alleged prescriptive period of time, namely, 1954 until 1977. American further argues that there is ample evidence of adverse use of the crossing from 1959 to 1977 to support the trial court's determination.

This court set out the relevant standard of review in *Wehde I*:

"To meet the requirement of *adverse use*, the claimant must show that the use of the property or right-of-way was with the knowledge and acquiescence of the owner but without his permission. [Citation.] While the burden of proof is on the party claiming the prescriptive right, the law recognizes rebuttable presumptions regarding the requirement of adversity. *** If the presumption arises, the burden of proof shifts to the defendant to present factual support for the claim that a prescriptive easement did not arise. However, the issue of whether there was adverse use of a way under a claim of right for a period of 20 years is almost wholly a question of fact. As such, where there is conflicting testimony in a bench trial, the findings of the court will not be disturbed on review unless they are against the manifest weight of the evidence." (Emphasis added.) *Wehde*, 237 Ill. App. 3d at 678.

Moreover, we note that the *Wehde I* court determined that for both parcels there was privity between the users of the properties. Accordingly, the *Wehde I* court found that the periods of use could be

tacked together to meet the statutory (20-year) period. *Wehde*, 237 Ill. App. 3d at 677.

Further, in *Wehde I*, this court recounted the evidence regarding American's parcel, thusly:

"The next point in time to which the crossing was traced was 1954, when Klaas and Andrea Bleeker purchased the Trust Parcel from Catherine Graham. Mrs. Bleeker stated that when she purchased the property, a road existed adjacent to Ingleside Avenue to the north side of the railroad right-of-way and crossed the tracks onto their land. She further stated that, at the time she and her husband were negotiating to purchase the property, the crossing consisted of deteriorating asphalt between the tracks and next to the embankment. The roadway on each side consisted of stone and gravel mixed with dirt. Upon their purchase, the Bleekers upgraded the crossing. Mrs. Bleeker testified that the only access to the house they built on the property was over the crossing because the south and west portions of the parcel consisted of swamplands which were frequently under water. Mrs. Bleeker stated that her family and friends always used the crossing for ingress and egress, without permission.

Mrs. Bleeker's testimony was reiterated in an affidavit by her husband, Klaas Bleeker, who recalled the crossing of asphalt and dirt both prior to and at the time of their purchase. The Bleekers' son, Bruce Bleeker, who was 17 years old when his parents purchased the property, also recalled the crossing in his affidavit. He described the crossing as a mixture of gravel, asphalt and dirt, which was deteriorating and in need of repair. He reiterated that his parents upgraded the crossing after their purchase by loading gravel into the crevices and that they used the crossing for access to their property.

Howell and Mimi Howard purchased the Trust Parcel from the Bleekers in 1966. The Howards stated by affidavit that the railroad crossing was the only means of access to their property and that they used it without permission, as did all of their visitors. Howell Howard also recalled a crossbuck railroad crossing sign posted on the roadway at the junction of the crossing and Ingleside Avenue and painted whistle boards located in both directions on the track.

The next owner of the Trust Parcel was Richard Sachse, who purchased the property from the Howards in 1973. Consistent with the testimony of his predecessors, Sachse testified that the railroad crossing was the only means of access to the property." *Wehde*, 237 Ill. App. 3d at 678-79.

Further, in *Wehde I*, this court wrote:

"[T]he owners of the [American] parcel (the Bleekers (1954-1966), the Howards (1966-1973), and Richard Sachse (1973-present)) all

testified that they utilized the crossing without permission as the sole means of access to their property during their entire period of ownership." *Wehde*, 237 Ill. App. 3d at 680.

The *Wehde I* court emphasized the uncontroverted nature of American's evidence as to its claim for a prescriptive easement. On remand, it was incumbent upon defendant to produce evidence that rebutted American's case as to the element of adversity. Essentially, defendant's case consisted of documents regarding the existence of a farm crossing existing in the early 1900s. Also, the testimony of its primary witness, Robert Schuster, had little to do with the subject prescriptive period of 1954 through 1977. In general, defendant's evidence did little to counter American's evidence of adversity. Accordingly, we find that the trial court did not err in finding that American had proved adversity for the prescriptive period.

Next, defendant contends that American did not prove the essential elements of its section 1983 (42 U.S.C. § 1983 (1982)) claim, and, thus, the trial court erred in permitting American to petition for attorney fees and costs, pursuant to section 1988. In response, American maintains that it proved all necessary elements of its section 1983 claim.

■ To make a claim under section 1983 of the Act, a plaintiff must demonstrate that some person has deprived him of a constitutionally protected right. Plaintiff must then prove that the person depriving him of the right acted under the color of state law. *Du Page Aviation Corp., Flight Services, Inc. v. Du Page Airport Authority*, 229 Ill. App. 3d 793, 807 (1992). If these first two requirements are met, plaintiff must then establish that there is no effective remedy provided by the State. *Parratt v. Taylor*, 451 U.S. 527, 543, 68 L. Ed. 2d 420, 433-34, 101 S. Ct. 1908, 1917 (1981).

■ Defendant initially argues that it was not a "person" acting under the color of state law. Essentially, in this subsection, defendant is arguing that it may be held liable only for those actions which its board officially sanctioned or ordered. In effect, defendant appears to be arguing that the actions of Robert Schuster were not based on any "final policy making authority," and, therefore, his actions could not subject defendant to section 1983 liability. This contention is patently without merit.

Robert Schuster testified that, in the course of his work as defendant's assistant head of engineering, he had cause to inspect the crossing installed by the Wehdes. He determined that it was improperly constructed and ordered it removed. The clear implication of Schuster's testimony is that, in examining the subject crossing and ordering its removal, he was acting in a capacity sanctioned

by defendant. The fact that this *particular action* taken by Schuster was not specifically ordered by defendant is of no import. This was a routine matter that did not require specific approval of the defendant's board. See *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 509 (7th Cir. 1993) (unit of local government responsible for employee's actions if taken pursuant to the custom of the unit).

■ Next, defendant argues that the removal of the crossing did not amount to the taking of a constitutionally protected property interest. Defendant maintains that the only property at stake was the material that the Wehdes used to make the crossing. According to defendant, because American contributed neither funds nor materials to the crossing's construction, it had no property interest whatsoever in the crossing.

This argument is disingenuous at best. It is undisputed that the destruction of the crossing has severely limited American's *use* of and access to its property. The fact that American did not build the crossing itself is immaterial in this context.

■ Finally, defendant contends that American had a valid post-deprivation remedy, namely, an inverse condemnation action or suit for damages. In contrast, American maintains that the relevant evidence case law supports its position that a predeprivation hearing was necessary.

In determining the necessity of a predeprivation hearing, the inquiry to be made is whether the state entity is in a position to provide for a predeprivation process. *Zinermon v. Burch*, 494 U.S. 113, 130, 108 L. Ed. 2d 100, 117, 110 S. Ct. 975, 985-86 (1990). As a result, where the State can feasibly provide a predeprivation hearing before taking property, it generally must do so, despite the adequacy of a post-deprivation tort remedy to compensate for the taking. *Zinermon*, 494 U.S. at 132, 108 L. Ed. 2d at 118, 110 S. Ct. at 987.

In the appeal at bar, defendant would have us believe that a state of emergency existed as to the subject crossing and that it could not wait for predeprivation proceedings. This alleged crisis is not borne out by the record. It is undisputed that the Wehdes installed the crossing in 1987 and that it was in place without incident for approximately a year. Stephen Wehde testified that he had constructed the crossing based on the configuration of the nearby private crossing on Pawlowski's property. In the view of Wehde, who had extensive experience in carpentry and concrete work, the crossing's construction was superior to that of Pawlowski's crossing. Robert Schuster did not testify that the crossing was causing any actual problems. Rather, he ordered the crossing removed because it could cause drainage problems. Schuster indicated other alleged violations of

defendant's specifications for crossings but did not elaborate on them. This evidence does not demonstrate a circumstance in which there was insufficient time for a predeprivation hearing.

We conclude that, given this record, the trial court properly found that American proved all necessary elements in its section 1983 claim and that the trial court did not err in permitting American to petition for attorney fees and costs pursuant to section 1988.

## THE WEHDES' CLAIM FOR A PRESCRIPTIVE EASEMENT

Initially, the Wehdes argue that the trial court erred in finding that there was no easement over the American parcel from the west end of the crossing to the northern boundary of the 20-foot strip.

■ The parties argue extensively regarding whether an easement of any kind existed over the land in between the 20-foot strip and the crossing. It would be needlessly confusing to recount all their arguments related to this issue. It is apparent to us that one of the theories argued by the Wehdes is that *an easement by way of necessity* existed over this small section of land between the crossing and the 20-foot strip. This type of easement was discussed in *Evanik v. Janus*, 120 Ill. App. 3d 475 (1983), which we quote at length:

"A way of necessity is a particular kind of implied easement. The concept was apparently first noted in Illinois in the case of *Gilfoy v. Randall* (1916), 274 Ill. 128, 113 N.E. 88, and later expanded in *Finn v. Williams* (1941), 376 Ill. 95, 33 N.E.2d 226. Plaintiffs rely heavily on the *Finn* case in support of their position. The facts of *Finn* are similar to those of the instant case.

The property at issue in *Finn* was at one time owned entirely by Williams who sold Finn the northwest corner of it. The property purchased by Finn abutted no public roads. At trial, he claimed that the only means of ingress and egress to his property was a road which crossed the remaining property of Williams. Williams denied this. The court found that other private roads had been in existence since the time of the original severance but that those means of access had been closed or were no longer in existence. At the time of trial, the only access to a highway (as indicated by testimony of defendant's witnesses) was a road across defendant's land which was now denied to plaintiff. Based on these circumstances, the trial court found that an easement existed across the defendant's lands. On appeal, the defendant urged that private roads had supplied the plaintiff access to the property for a long period of time and so no necessity was proved either at the time of severance or the time of trial. The plaintiff replied that changed circumstances had created a necessity for a way to a public road and the supreme court agreed.

The [*Finn*] court delineated the elements which must be proved before a way of necessity would be found. Whenever a conveyance by severance creates a situation where one parcel of land has no access to a public highway except over the remaining lands of the grantor or the lands of strangers, an easement over the remaining lands of the grantor is implied in the grant. Further, where such a situation exists, the easement need not be put to continuous use but may lie dormant through successive grantees to be used at any time by a subsequent titleholder." 120 Ill. App. 3d at 487-88.

■ It is evident to us that, in creating the 20-foot strip, Catherine Graham and the Bleekers thought that it abutted the crossing and that no written easement was needed. The subsequent owners of the parcels apparently had the same view. It was only during these proceedings in this case that the owners of the subject properties came to realize that the crossing did not abut the 20-foot strip. To remedy the situation, American granted the Wehdes an easement over the disputed portion of the former's property. The trial court found this written easement to be immaterial in determining whether the Wehdes had a prescriptive easement over defendant's right-of-way.

The record at bar demonstrates that the 20-foot strip was landlocked from the moment of its creation. To the west was the Bleekers' property, to the north was the railroad right-of-way, to the south and east were strangers' properties.

This was clearly a situation in which the following language from *Finn v. Williams*, 376 Ill. 95, 99 (1941), applies:

"Where an owner of land conveys a parcel thereof which has no outlet to a highway except over the remaining lands of the grantor or over the land of strangers, a way by necessity exists over the remaining lands of the grantor."

Here, the only access to the highway from the 20-foot strip was over the Bleekers' lands.

Accordingly, we find that the trial court erred in determining that the Wehdes failed to establish an easement by way of necessity across American's property to the crossing.

■ Next, the Wehdes contend that the trial court erred in finding that they had failed to establish an easement by prescription over the railroad right-of-way. The parties argue as to whether the Wehdes proved the elements of exclusivity, adversity, and open and notorious use. The trial court made no specific findings as to these elements. Nevertheless, as we have indicated above, the alleged prescriptive period ran from the mid-1950s to 1977, when the first crossing was dismantled by defendant's predecessor. As stated above,

the Wehdes' property was owned by members of the Graham family (until 1958) and the Muehlfelders (from 1958 to 1985).

As to exclusivity, the Wehdes argue that they only had to show that the use of the railroad crossing was not dependent upon any use by owners of the American parcel and, therefore, is exclusive.

In response, defendant asserts that the evidence showed that the owners of the Wehdes' parcel were dependent upon the claim of the owners of the American parcel. Defendant points to the fact that Walter Muehlfelder testified that he needed a key provided by the owners of the American parcel to open the gate on the west side of the crossing. Defendant also finds it significant that the Muehlfelders did nothing to maintain the crossing.

Initially, we note that the facts alluded to by defendant, which relate to security concerns and maintenance of the crossing, are not pertinent to our determination. We are not aware of any authority to support defendant's contentions that such evidence is of any importance in deciding exclusivity.

In *McKenzie v. Elliott*, 134 Ill. 156 (1890), the supreme court stated in relevant part:

> " 'It would seem that it is not necessary that the one who claims the easement should be the only one who can or may enjoy that or a similar right over the same land, but that his right should not depend for its enjoyment upon a similar right in others, and that he may exercise it under some claim existing in his favor, independent of all others.' " 134 Ill. at 163, quoting Washburn's Easements & Servitudes § 44, at 164 (4th ed.).

The use of the crossing by the owners of the Wehdes' parcel during the subject period was based on their right, independent from any other. See also *Light v. Steward*, 128 Ill. App. 3d 587, 594 (1984).

The parties next dispute whether there was sufficient proof of open and notorious use. Walter Muehlfelder testified that, in 1956, he went over the crossing on occasion with members of the Graham family, who then owned what is now the Wehdes' parcel. The Muehlfelders bought the Wehdes' parcel in 1958. Mr. Muehlfelder testified that his family used the property for picnicking, mushroom hunting, collecting firewood, and target shooting. He occasionally permitted people to hunt on the property. On numerous occasions, he allowed groups of Boy Scouts to camp on the property. Also, Thomas Muehlfelder testified that for a period of years in the mid-1970s he frequently went dirt biking on his family's property. The parties do not cite any authority that quantifies how much use is needed to meet the open and notorious element. Without such guidance, we find that the undisputed testimony of the Muehlfelders was more than sufficient to establish open and notorious use.

Finally, the Wehdes maintain that they established the element of adversity. Defendant argues that the Wehdes put on no evidence regarding adversity.

Whether there was adverse use of a way or the use of the way was only permissive is a question of fact for the trial court, which will not be disturbed on review unless manifestly against the weight of the evidence. *Light*, 128 Ill. App. 3d at 594-95.

There is no evidence whatsoever that defendant's predecessors gave permission to the Grahams and subsequently the Muehlfelders to use the crossing. Moreover, Walter Muehlfelder's testimony indicated that he regularly used the crossing without permission from 1957 on. Clearly, this record provides no support for the trial court's determination of the adversity element.

Regarding the Wehdes' claim for a prescriptive easement, we conclude that the trial court's denial of same was against the manifest weight of the evidence.

■ The Wehdes next argue that they are entitled to attorney fees and costs pursuant to section 1988. This assertion is virtually the same as that put forward above by American. For the reasons articulated in our discussion of American's argument, we agree with the Wehdes that they are entitled to petition for recovery of said attorney fees and costs.

■ Finally, the Wehdes argue that the trial court erred in denying their claim for damages. In its judgment order, the trial court ruled on the Wehdes' claim for damages, in the event that this court reversed its denial of the Wehdes' claims for a prescriptive easement and injunctive relief. Specifically, the trial court found the following: (1) that the alleged damages to nursery crops were too speculative; (2) that the alleged increase in the construction of a new home was too speculative; (3) that regarding the equipment on the Wehdes' property, with the exception of the HD5 bulldozer, the Wehdes failed to mitigate their damages; and (4) that the HD5 bulldozer was brought over to the Wehdes' property in violation of a court order, and, thus, the Wehdes were not entitled to any damages regarding this piece of machinery.

The Wehdes point out that defendant never raised the affirmative defense of failure to mitigate damages. See *Nancy's Home of the Stuffed Pizza, Inc. v. Cirrincione*, 144 Ill. App. 3d 934, 941 (1986) (failure to mitigate damages is an affirmative defense that must be pleaded and proved). Accordingly, we find the trial court erred in relying on the Wehdes' failure to mitigate damages as a reason to deny their claim for damages regarding the equipment stored on the property. Moreover, given the rather off-handed manner in which the

entire issue of damages was handled, we find that, on remand, a new and complete hearing is to be held on the Wehdes' claim for damages.

In conclusion, we affirm the circuit court as to its granting of American's claims for a prescriptive easement and injunctive relief, as well as its permitting American to petition for recovery and for attorney fees and costs; reverse the circuit court's denial of the Wehdes' claim of a prescriptive easement and injunctive relief and its denial of permission to the Wehdes to petition for recovery of attorney fees and costs; and remand this cause for a hearing regarding both plaintiffs' section 1988 petitions for attorney fees and costs and for a new hearing on the Wehdes' claim for damages.

Affirmed in part and reversed in part; cause remanded.

INGLIS and BOWMAN, JJ., concur.